Citation Nr: 1222007 
Decision Date: 06/22/12 Archive Date: 07/02/12

DOCKET NO. 08-20 806 ) DATE
 )
 )

On appeal from the
Department of Veterans Affairs Regional Office in Roanoke, Virginia


THE ISSUES

1. Entitlement to service connection for an acquired psychiatric disability, to include posttraumatic stress disorder (PTSD).

2. Entitlement to service connection for right shoulder disability.

3. Entitlement to service connection for defective vision.

4. Entitlement to service connection for skin disability of the foot, to include as due to exposure to herbicides.

(The issue of entitlement to an initial compensable disability rating for bilateral hearing loss is the subject of another decision.)


REPRESENTATION

Appellant represented by: Brooks S. McDaniel, Agent

WITNESS AT HEARING ON APPEAL

Appellant


ATTORNEY FOR THE BOARD

G. E. Wilkerson, Associate Counsel


INTRODUCTION

The Veteran served on active duty from August 1967 to March 1970.

These matters come before the Board of Veterans' Appeals (Board) on appeal of a rating decision of the Department of Veterans Affairs (VA) Regional Office (RO) in Roanoke, Virginia.

In June 2010, the Veteran testified during a Board videoconference hearing before the undersigned Veterans Law Judge; a transcript of the hearing is of record.

In July 2010, the Board remanded the matters to the RO, via the Appeals Management Center in Washington, DC, for additional development. The case has since returned to the Board for further appellate action.

A review of the Veteran's Virtual VA claims folder revealed no additional records.


FINDINGS OF FACT

1. Although medical evidence indicates treatment for PTSD, persuasive medical opinion evidence on the question of diagnosis establishes that the Veteran did not meet the diagnostic criteria for PTSD. No other acquired psychiatric disability has been diagnosed.

2. The Veteran does not currently have, nor had at any point pertinent to the claim, a right shoulder disability.

3. The Veteran does not currently have, nor had at any point pertinent to the claim, a disability manifested by vision loss.

4. The Veteran does not currently have, nor had at any point pertinent to the claim, a skin disability of the foot, to include skin disability associated with herbicide exposure.


CONCLUSIONS OF LAW

1. The criteria for service connection for an acquired psychiatric disorder, to include PTSD, are not met. 38 U.S.C.A. §§ 1110, 5103, 5103A, 5107(b) 5121A (West 2002 & Supp. 2011); 38 C.F.R. §§ 3.102, 3.159, 3.303, 3.304 (2011). 

2. The criteria for service connection for a right shoulder disability are not met. 38 U.S.C.A. §§ 1110, 5103, 5103A, 5107(b) 5121A (West 2002 & Supp. 2011); 38 C.F.R. §§ 3.102, 3.159, 3.303 (2011). 

3. The criteria for service connection for defective vision are not met. 38 U.S.C.A. §§ 1110, 5103, 5103A, 5107(b) 5121A (West 2002 & Supp. 2011); 38 C.F.R. §§ 3.102, 3.159, 3.303 (2011). 

4. The criteria service connection for skin disability of the foot, to include as due to exposure to herbicides, are not met. 38 U.S.C.A. §§ 1101, 1110, 1112, 1113, 1116, 5103, 5103A, 5107 (West 2002 & Supp. 2011); 38 C.F.R. §§ 3.159, 3.303, 3.307, 3.309, 3.313 (2011).




REASONS AND BASES FOR FINDINGS AND CONCLUSIONS

I. Duties to Notify and Assist

The Veterans Claims Assistance Act of 2000 (VCAA), codified in pertinent part at 38 U.S.C.A. §§ 5103, 5103A (West 2002 & Supp. 2011), and the pertinent implementing regulation, codified at 38 C.F.R. § 3.159 (2011), provide that VA will assist a claimant in obtaining evidence necessary to substantiate a claim but is not required to provide assistance to a claimant if there is no reasonable possibility that such assistance would aid in substantiating the claim. They also require VA to notify the claimant and the claimant's representative, if any, of any information, and any medical or lay evidence, not previously provided to the Secretary that is necessary to substantiate the claim. As part of the notice, VA is to specifically inform the claimant and the claimant's representative, if any, of which portion, if any, of the evidence is to be provided by the claimant and which part, if any, VA will attempt to obtain on behalf of the claimant. Although the regulation previously required VA to request that the claimant provide any evidence in the claimant's possession that pertains to the claim, the regulation has been amended to eliminate that requirement for claims pending before VA on or after May 30, 2008. 

The Board also notes that the United States Court of Appeals for Veterans Claims (Court) has held that the plain language of 38 U.S.C.A. § 5103(a) requires that notice to a claimant pursuant to the VCAA be provided "at the time" that, or "immediately after," VA receives a complete or substantially complete application for VA-administered benefits. Pelegrini v. Principi, 18 Vet. App. 112, 119 (2004). 

The timing requirement enunciated in Pelegrini applies equally to the initial-disability-rating and effective-date elements of a service-connection claim. Dingess v. Nicholson, 19 Vet. App. 473 (2006).

In the case at hand, the record reflects that the originating agency provided the Veteran with the notice required under the VCAA, including notice with respect to the disability-rating and effective date elements of his claims for service connection, by letter mailed in March 2007, prior to the initial adjudication of the claims.

The record also reflects that VA has made reasonable efforts to obtain or to assist in obtaining all relevant records pertinent to the claims herein decided. Pertinent medical evidence associated with the claims file consists of service treatment records, post-service VA and private treatment records and the reports of a VA psychiatric examination. Also of record and considered in connection with the appeal is a transcript of the Veteran's June 2010 Board hearing, as are various written statements provided by the Veteran, and by his representative on his behalf. The Board also finds that no additional RO action to further develop the record in connection with the claims is warranted.

The record reflects that the Board remanded the Veteran's claim in July 2010, in part, to obtain private medical records from private facilities where the Veteran indicated he was treated for the claimed disabilities. The Veteran submitted his authorization and consent for VA to obtain records from various private facilities. However, these facilities, including Roanoke Memorial, and the Lewis Gail Hospital, and Roanoke Orthopedic, indicated that they did not have any records pertaining to the Veteran. The Veteran was informed of VA's inability to obtain the records and reminded of his responsibility to see that VA received any outstanding records. Given the foregoing, the Board finds that VA has substantially complied with the Board's previous remand with regard to the claims decided herein. See Dyment v. West, 13 Vet. App. 141, 146-47 (1999). 

The Board also acknowledges that the Veteran has not been afforded an examination with respect to the claims for service connection for defective vision, right shoulder disability, and skin disability of the foot. However, the Board has determined that an examination to determine etiology of these claimed disabilities is not required in this case because the medical evidence currently of record is sufficient to decide the claims and there is no reasonable possibility that such an examination would result in evidence to substantiate the claims. In this regard, the Board notes that-as will be discussed in further detail below-the medical evidence of record does not reflect current diagnosis of any of the claimed disabilities or suggest such disabilities had their onset or are otherwise related to service.

In sum, the Board is satisfied that any procedural errors in the originating agency's development and consideration of the claim were insignificant and non prejudicial to the Veteran. Accordingly, the Board will address the merits of the claims.

II. Analysis

Service connection may be granted for disability resulting from disease or injury incurred in or aggravated by service. 38 U.S.C.A. § 1110; 38 C.F.R. § 3.303. Service connection may be granted for any disease diagnosed after discharge from service when all the evidence, including that pertinent to service, establishes that the disease was incurred in service. 38 C.F.R. § 3.303(d).
 
A. Acquired Psychiatric Disability

In addition to the above-noted authority, the service connection for PTSD requires a medical diagnosis of PTSD in accordance with 38 C.F.R. § 4.125(a); a link, established by medical evidence, between current symptoms and an in-service stressor; and credible supporting evidence that the claimed in-service stressor occurred. 38 C.F.R. § 3.304(f).

Diagnoses of PTSD must be rendered in accordance with the diagnostic criteria for the condition set forth in the Fourth Edition of the American Psychiatric Association's Diagnostic and Statistical Manual of Mental Disorders (DSM-IV). See 38 C.F.R. § 4.125 (noting that VA has adopted the nomenclature of the DSM-IV).

The Veteran's service treatment records do not reflect complaints, diagnosis, or treatment of psychiatric disability, to include PTSD. His personnel records reflect he served in Vietnam from April 1969 to March 1970 and participated in the Tet Counteroffensive. His military occupational specialty was vehicle mechanic. He is in receipt of the Vietnam Campaign Medal and Vietnam Service Medal.

Following service, a June 2004 VA outpatient treatment report notes that the Veteran was currently receiving treatment for PTSD. When interviewed, the Veteran reported symptoms of difficulty sleeping, anxiety, depression, hyper startle response, and problems controlling his temper. He reported that he served in Vietnam as part of the 173 Airborne division. He indicated that witnessed a lot of fire fights and saw death and dying around him. He reported that he had bullets fly by him a number of times. Another significant non-service stressor was the death of his son to overdose. After a mental status examination, the examiner assigned diagnoses of alcohol dependence/abuse, substance induced mood disorder, and PTSD. 

A November 2004 treatment report reflects continued diagnosis and treatment of alcohol dependence/abuse, substance induced mood disorder, and PTSD.

During the Veteran's June 2010 Board hearing, the Veteran testified that he was diagnosed with PTSD approximately in 2006. He also indicated that he had a long history of alcohol abuse beginning in 1970, which he said was a form of self-treatment. He asserted that his PTSD was due to stressful experiences while serving in Vietnam. 

On VA examination in September 2010, the Veteran reported that during his service in Vietnam, he was originally assigned to the motor pool as a mechanic, but later conducted guard duty on the perimeter, operated a .50 caliber, and conducted mine sweeps of the roads. He reported various incidents in Vietnam, including losing friends to a land mine explosion, being subjected to incoming mortar rounds, backing a car over a Vietnamese man for which he received an Article 15, witnessing a solider wounded by a round from a machine gun on a helicopter. He reported that several rounds of fire came within close proximity of his neck when on perimeter guard duty. 

After eliciting a complete medical and social history, as well as performing a mental status examination, the examiner noted that while the Veteran appeared to meet the DSM-IV stressor criteria for a diagnosis of PTSD, he did not meet the symptom criteria for the diagnosis. The examiner noted that he Veteran was evasive in answering a number of the questions and digressed to recount seemingly unrelated and irrelevant accounts, some of which did not pertain to him. In addition, the Veteran reported constant anxiety and depression, but failed to display any signs of depression or anxiety and appeared to be quite relaxed and comfortable. The Veteran was also unable to report dreams related to his experience in Vietnam and of having intrusive thoughts related to Vietnam. He reported viewing numerous movies about Vietnam without any apparent emotional distress and only commented on the accuracy and reality of the movies. He also reported a history of self-employment for thirty years and continued to work. Thus, the examiner concluded by assigning a diagnosis only of alcohol dependence, chronic. 

In a February 2011 addendum opinion, the examiner reiterated that the stressors reported by the Veteran are consistent with reported stressors noted in the claims file and are sufficient to produce PTSD; however, the remaining diagnostic criteria to support a diagnosis of PTSD have not been satisfied. The examiner again noted that the Veteran was not regarded as a reliable reported regarding his PTSD symptoms and appeared to be evasive and elusive in answering questions regarding his PTSD symptoms. He indicated that the only psychiatric disability found to be present is alcohol dependence, which he did not attribute to military service.

The above-cited evidence reflects that the record contains conflicting medical evidence on the question of whether the Veteran actually meets the diagnostic criteria for PTSD. 

It is the responsibility of the Board to assess the credibility and weight to be given the evidence. See Hayes v. Brown, 5 Vet. App. 60, 69-70 (1993) (citing Wood v. Derwinski, 1 Vet. App. 190, 192-93 (1992)). The probative value of medical evidence is based on the physician's knowledge and skill in analyzing the data, and the medical conclusion the physician reaches; as is true of any evidence, the credibility and weight to be attached to medical opinions are within the province of the Board. See Guerrieri v. Brown, 4 Vet. App. 467, 470-71 (1993). 

When reviewing such medical opinions, the Board may appropriately favor the opinion of one competent medical authority over another. See Owens v. Brown, 7 Vet. App. 429, 433 (1995). However, the Board may not reject medical opinions based on its own medical judgment. See also Obert v. Brown, 5 Vet. App. 30 (1993); Colvin v. Derwinski, 1 Vet. App. 171 (1991). In assessing medical opinions, the failure of the physician to provide a basis for his opinion goes to the weight or credibility of the evidence in the adjudication of the merits. See Hernandez-Toyens v. West, 11 Vet. App. 379, 382 (1998). Other factors for assessing the probative value of a medical opinion are the physician's access to the claims file and the thoroughness and detail of the opinion. See Prejean v. West, 13 Vet. App. 444, 448-49 (2000). A medical opinion may not be discounted solely because the examiner did not review the claims file. Nieves-Rodriguez v. Peake, 22 Vet. App. 295, 304 (2008).

The only evidence of record reflecting a possible diagnosis of PTSD is the VA outpatient treatment records, which reflect treatment of PTSD. However, treatment providers did not state any rationale to support a diagnosis of PTSD, and did not discuss the DSM-IV criteria. Accordingly, the Board is affording the VA treatment records little probative value on the question of whether the Veteran actually meets the diagnostic criteria for PTSD.

By contrast, the Board accepts the September 2012 VA examiner's opinion that the Veteran does not meet the criteria for a diagnosis of PTSD as highly probative medical evidence on this point. The Board notes that the examiner rendered this opinion after thoroughly reviewing the claims file and medical records and examining the Veteran. The examiner noted the pertinent history, elicited and described the Veteran's symptoms in detail, described the specific diagnostic criteria set forth in DSM-IV, and provided a reasoned analysis of the case. See Hernandez-Toyens, 11 Vet. App. at 383; Gabrielson v. Brown, 7 Vet. App. 36, 40 (1994) (the probative value of a physician's opinion depends in part on the reasoning employed by the physician and whether or not (or the extent to which) he reviewed prior clinical records and other evidence). The Board finds this opinion highly probative. Thus, the most persuasive, competent opinion on the question of current diagnosis of PTSD weighs against the claim.

Thus, without persuasive evidence of current diagnosis of PTSD, there is no basis upon which to award service connection, as sought, and discussion of the remaining criteria of 38 C.F.R. § 3.304(f) is unnecessary.

The Board emphasizes that Congress has specifically limited entitlement to service connection for disease or injury to cases where such incidents have resulted in disability. See 38 U.S.C.A. § 1110. See also McClain v. Nicholson, 21 Vet. App. 319, 321 (2007). Accordingly, where, as here, competent medical evidence indicates that the Veteran does not have the disability for which service connection is sought, there can be no valid claim for service connection for the disability. See Gilpin v. West, 155 F.3d 1353 (Fed. Cir. 1998); Brammer v. Derwinski, 3 Vet. App. 223, 225 (1992).

As for psychiatric disability other than PTSD, the Board notes that the Veteran has only been diagnosed with chronic alcohol dependence. However, under 38 C.F.R. § 3.301(c), if disability or death results from the drinking of a beverage to enjoy its intoxicating effects, the disability will be considered the result of the person's willful misconduct for which service connection may not be granted. Further, an injury or disease incurred during active service is not deemed to have been incurred in the line of duty if such injury or disease was the result of the abuse of alcohol or drugs by the person on whose service benefits are claimed. 38 C.F.R. § 3.301(d). For purposes of applying the above rule, alcohol abuse means the use of alcoholic beverages over time, or such excessive use at one time, sufficient to cause disability or death of the user. Id.

The Board acknowledges that alcohol and drug abuse will not be considered of misconduct origin if they are used for therapeutic purposes, as the Veteran alleges here. See 38 C.F.R. § 3.301(c)(3). In this case, however, the only medical opinion to address whether the Veteran's alcohol dependence is related to service stressors-that of the September 2010 VA examiner-is against the claim. Significantly, neither the Veteran nor his representative has presented or identified any contrary medical opinion-i.e., one that, in fact, supports the claim.

Furthermore, as regards any direct assertions by the Veteran and/or his representative that he has a current diagnosed psychiatric disability that is medically related to service, the Board finds that such assertions provide no basis for allowance of the claim. As indicated above, this claim turns on the question of medical diagnosis and etiology of disability for which service connection is sought-a matter within the province of trained medical professionals. See Jones v. Brown, 7 Vet. App. 134, 137-38 (1994). As the Veteran and his representative are not shown to be other than laypersons without appropriate medical training and expertise, none is competent to render a probative (persuasive) opinion on such a medical matter. See, e.g., Bostain v. West, 11 Vet. App. 124, 127 (1998), citing Espiritu v. Derwinski, 2 Vet. App. 492 (1992). See also Routen v. Brown, 10 Vet. App. 183, 186 (1997) ("a layperson is generally not capable of opining on matters requiring medical knowledge"). Hence, the lay assertions in this regard have no probative value.

For all the foregoing reasons, the Board finds that the claim for service connection for acquired psychiatric disorder, to include PTSD, must be denied. In reaching the conclusion to deny each claim, the Board has considered the applicability of the benefit-of-the- doubt doctrine. However, as the preponderance of the evidence is against the claim, that doctrine is not applicable. See 38 U.S.C.A. § 5107(b); 38 C.F.R. § 3.102; Gilbert v. Derwinski, 1 Vet. App. 49, 53- 56 (1990).

B. Right Shoulder

The Veteran contends that he is entitled to service connection for a right shoulder disability, as he believes that this current disability stems from an initial injury while in service.

The Veteran's service treatment records do not reflect complaints, findings, or diagnosis with respect to the right shoulder. There were no abnormalities listed with respect to the right shoulder on the Veteran's May 1970 report of medical history or discharge examination.

Following service, a December 1989 VA treatment report reflects that the Veteran complained of right shoulder pain. He stated that he had a right shoulder injury dating back to approximately 1969. He indicated that he hurt the shoulder in Vietnam and the again in 1979. After physical examination, an assessment of chronic right shoulder pain was noted.

The Veteran presented for a right shoulder x-ray in January 1990. At that time, a provisional diagnosis of questionable torn rotator cuff was noted. However, an x-ray was negative. 

Additional VA outpatient treatment records dated from 2002 to 2004 does not reflect complaints, treatment, or diagnosis of a right shoulder disability.

During the Veteran's June 2010 Board hearing, he testified that he initially injured his right shoulder during service in Vietnam, and was simply treated with pain-relievers. He said that that since service, his suffered from rotator cuff damage and had been treated by private physicians. 

In sum, the record reflects that while the Veteran experienced some difficulties with his right shoulder following service, no definitive diagnosis related to these symptoms has been assigned. 

The Board observes that the Court has held that a symptom, alone, without a diagnosed or identifiable underlying malady or condition, does not in and of itself constitute a disability. Without a pathology to which the symptoms of right shoulder pain can be attributed, there is no basis to find a disability or disease for which service connection may be granted. See Sanchez-Benitez v. West, 13 Vet. App. 282, 285 (1999) ("pain alone, without a diagnosed or identifiable underlying malady or condition, does not in and of itself constitute a disability for which service connection may be granted."); dismissed in part and vacated in part on other grounds, Sanchez-Benitez v. Principi, 239 F.3d 1356 (Fed. Cir. 2001).

The Board again emphasizes that Congress has specifically limited entitlement to service connection for disease or injury to cases where such incidents have resulted in disability. See 38 U.S.C.A. § 1110. See also McClain, 21 Vet. App. at 321. Accordingly, where, as here, competent medical evidence indicates that the Veteran does not have a disability manifested by vision loss, there can be no valid claim for service connection for the disability. See Gilpin, 155 F.3d at 1353; Brammer, 3 Vet. App. at 225.

Thus, even if the Board were to accept the Veteran's contentions as to initial right shoulder injury in service and continuous right shoulder symptoms since service, the claim for service connection cannot be granted as the first essential criterion for a grant of service connection-competent evidence of the currently-claimed disability-has not been met.

In addition to the medical evidence, the Board has considered the assertions advanced by the Veteran and by his representative, on his behalf. However, as indicated above, the question of medical diagnosis upon which this claim turns is a matter within the province of trained medical professionals. See Jones, 7 Vet. App. at 137-38. As laypersons not shown to have the appropriate medical training or expertise, neither the Veteran nor his representative is competent to persuasively establish current right shoulder disability. See Bostain, 11 Vet. App. at 127, citing Espiritu, 2 Vet. App. at 492. See also Routen, 10 Vet. App. at 186 (1997). 

For all the foregoing reasons, service connection for right shoulder disability must be denied. In reaching this conclusion, the Board has considered the applicability of the benefit-of-the-doubt doctrine; however, as no competent, persuasive evidence supports the claim, that doctrine is not for application. See 38 U.S.C.A. § 5107(b) ; 38 C.F.R. § 3.102; Gilbert, 1 Vet. App. at 53- 56. 

C. Defective Vision

In addition to the regulations regarding service connection cited above, the Board notes that congenital or developmental defects and refractive error of the eye are not diseases or injuries within the meaning of the applicable legislation. 38 C.F.R. §§ 3.303(c), 4.9. Such conditions are part of a life-long defect, and are normally static conditions which are incapable of improvement or deterioration. See VAOGCPREC 67-90 (1990) (O.G.C. Prec. 67-90) at 1.

As indicated during the Veteran's June 2010 Board hearing, he believes that service connection for defective vision is warranted because this disability originated in service. He reported that he had problems with his eyes during service and first noticed the onset of vision problems in 1975. He stated that he has not been diagnosed with any related disability.

At the outset, the Board notes that the Veteran's service treatment records do not reflect complaints, findings, or diagnosis related to the eyes or defective vision. On the Veteran's May 1970 discharge examination, 20/20 vision bilaterally was indicated.

Post service medical records, including VA outpatient treatment records dated from January 2002 through November 2004, do not contain any indication of complaint, findings, or diagnosis related to the eyes or defective vision.

To the extent that the Veteran's claims service connection for defective vision alone, the claim must be denied because, as noted above, the relevant regulations provide that refractory errors of the eye are defects and not entitled to compensation.

In addition, there is no indication in the record in service or otherwise, of a diagnosed eye disability manifested by defective vision. The Board again emphasizes that Congress has specifically limited entitlement to service connection for disease or injury to cases where such incidents have resulted in disability. See 38 U.S.C.A. § 1110. See also McClain, 21 Vet. App. at 321. Accordingly, where, as here, competent medical evidence indicates that the Veteran does not have a disability manifested by vision loss, there can be no valid claim for service connection for the disability. See Gilpin, 155 F.3d at 1353; Brammer, 3 Vet. App. at 225.

As regards the Veteran and his representative's assertions that he has a disability manifested by vision loss, such assertions alone, provide a basis for allowance of the claim. The Board notes that the Veteran is competent to testify as to his observations. See Jandreau v. Nicholson, 492 F.3d 1372, 1376-77 (Fed. Cir. 2007); Buchanan v. Nicholson, 451 F.3d 1331, 1336 (Fed. Cir. 2006). In addition, lay witnesses may, in some circumstances, opine on questions of diagnosis and etiology. See Davidson v. Shinseki, 581 F.3d 1313, 1316 (Fed. Cir. 2009) (Board's categorical statement that "a valid medical opinion" was required to establish nexus, and that a layperson was "not competent" to provide testimony as to nexus because she was a layperson, conflicts with Jandreau). 

However, in this case, the matter of medical diagnosis of disability manifested by defective vision is within the province of trained medical professionals. See Jones v. Brown, 7 Vet. App. 134, 137-38 (1994). As the Veteran and his representative are not shown to be other than laypersons without the appropriate medical training and expertise, neither is competent to render a competent diagnosis. See, e.g., Bostain, 11 Vet. App. at 127, citing Espiritu, 2 Vet. App. at 492. See also Routen, 10 Vet. App. at 186. Hence, the lay assertions in this regard have no probative value. 

Thus, even if the Board were to accept the Veteran's contentions as to onset of defective vision in service and continuous vision problems since service, the claim for service connection cannot be granted as the first essential criterion for a grant of service connection-competent evidence of the currently-claimed disability-has not been met.

For all the foregoing reasons, service connection for defective vision must be denied. In reaching this conclusion, the Board has considered the applicability of the benefit-of-the-doubt doctrine; however, as no competent, persuasive evidence supports the claim, that doctrine is not for application. See 38 U.S.C.A. § 5107(b) ; 38 C.F.R. § 3.102; Gilbert, 1 Vet. App. at 53- 56. 

D. Skin Disability of the Foot

Absent affirmative evidence to the contrary, there is a presumption of exposure to herbicides (to include Agent Orange) for all veterans who served in Vietnam during the Vietnam Era. See 38 U.S.C.A. § 1116(f) and 38 C.F.R. § 3.307(a)(6)(iii). In addition, a veteran who, during active military, naval, or air service, served between April 1, 1968, and August 31, 1971, in a unit that, as determined by the Department of Defense, operated in or near the Korean DMZ in an area in which herbicides are known to have been applied during that period, shall be presumed to have been exposed during such service to an herbicide agent, unless there is affirmative evidence to establish that the veteran was not exposed to any such agent during that service. See 38 C.F.R. § 3.307(a)(6)(iv) .

If a veteran was exposed to an herbicide agent (to include Agent Orange) during active military, naval, or air service, certain diseases, such as prostate cancer, shall be service-connected if the requirements of 38 C.F.R. § 3.307(a)(6) are met, even if there is no record of such disease during service, provided further that the rebuttable presumption provisions of 38 C.F.R. § 3.307(d) are also satisfied. 38 C.F.R. § 3.309(e). Thus, a presumption of service connection arises for a Vietnam veteran (presumed exposed to Agent Orange) who develops one of these conditions.

VA has determined that there is no positive association between exposure to herbicides and any other condition for which it has not specifically been determined that a presumption of service connection is warranted. See Notice, 59 Fed. Reg. 341-346 (1994); see also 61 Fed. Reg. 57586- 57589 (1996).

Considering the record in light of the above-noted legal authority, the Board finds that service connection for skin disability of the foot, to include as due to exposure to herbicides, is not warranted.

In this case, while the Veteran's DD 214 clearly reflects service in Vietnam from April 1969 to March 1970, and thus, he is presumed to have been exposed to Agent Orange during such service, for the purpose of this discussion.

However, the record does not establish that the Veteran has been diagnosed with a skin disability listed as one of the diseases associated with herbicide exposure under 38 C.F.R. § 3.309(e). Because the disability for which the Veteran is claiming service connection based on exposure to herbicide is not listed under 38 C.F.R. § 3.309(e), the Veteran is not entitled to service connection for this disability on a presumptive basis stemming from his exposure to herbicides in service. However, the regulations governing presumptive service connection for herbicide exposure do not preclude a veteran from establishing service connection with proof of actual direct causation. See Combee v. Brown, 34 F.3d 1039 (1994). Accordingly, the Board will proceed to evaluate the Veteran's claim under the provisions governing direct service connection, 38 U.S.C.A. § 1110 and 38 C.F.R. § 3.303.

With respect to whether service connection for a skin disability is warranted on a direct basis, the Veteran's service treatment records do not reflect complaints, findings, or diagnoses with respect to a skin disability of either foot.

Following service, VA outpatient treatment records dated in 1989 and again from 2002 to 2004 also do not reflect complaints, findings, or diagnoses with respect to a skin disability of either foot.

During the Veteran's June 2010 Board hearing, he testified that he has experienced ongoing problems with skin problems on his legs since the 1970s. He indicated that he got rashes above his ankles that did not heal. The Veteran also reported additional skin problems around his mouth over the last 30 years. 

In sum, there is no indication in the record of a medical diagnosis of a skin disability. The Board once again emphasizes that Congress has specifically limited entitlement to service connection for disease or injury to cases where such incidents have resulted in disability. See 38 U.S.C.A. § 1110. See also McClain, 21 Vet. App. at 321. Accordingly, where, as here, there is no competent medical evidence of a diagnosed skin disability, there can be no valid claim for service connection for the disability. See Gilpin, 155 F.3d at 1353; Brammer, 3 Vet. App. at 225.

The Board again notes that the Veteran is competent to testify as to his observations, such as problems with irritation of his skin. See Jandreau v. Nicholson, 492 F.3d 1372, 1376-77 (Fed. Cir. 2007); Buchanan v. Nicholson, 451 F.3d 1331, 1336 (Fed. Cir. 2006). In addition, lay witnesses may, in some circumstances, opine on questions of diagnosis and etiology. See Davidson, 581 F.3d at 1316 (Board's categorical statement that "a valid medical opinion" was required to establish nexus, and that a layperson was "not competent" to provide testimony as to nexus because she was a layperson, conflicts with Jandreau). 

However, in this case, the matter of medical diagnosis of a skin disability of the foot is within the province of trained medical professionals. See Jones v. Brown, 7 Vet. App. 134, 137-38 (1994). As the Veteran and his representative are not shown to be other than laypersons without the appropriate medical training and expertise, neither is competent to render a competent diagnosis. See, e.g., Bostain, 11 Vet. App. at 127, citing Espiritu, 2 Vet. App. at 492. See also Routen, 10 Vet. App. at 186. Hence, the lay assertions in this regard have no probative value. 

Thus, even if the Board were to accept the Veteran's contentions as continuous skin problems since service, the claim for service connection cannot be granted as the first essential criterion for a grant of service connection-competent evidence of the currently-claimed disability-has not been met.

For all the foregoing reasons, service connection for skin disability of the foot, to include as due to exposure to herbicides, must be denied. In reaching this conclusion, the Board has considered the applicability of the benefit-of-the-doubt doctrine; however, as no competent, persuasive evidence supports the claim, that doctrine is not for application. See 38 U.S.C.A. § 5107(b); 38 C.F.R. § 3.102; Gilbert, 1 Vet. App. at 53- 56. 




 (CONTINUED ON NEXT PAGE)



ORDER

Service connection for an acquired psychiatric disability, to include PTSD, is denied.

Service connection for right shoulder disability is denied.

Service connection for defective vision is denied.

Service connection for skin disability of the foot, to include as due to exposure to herbicides, is denied.


____________________________________________
MICHAEL D. LYON 
Veterans Law Judge, Board of Veterans' Appeals



Department of Veterans Affairs