William O. OBERT, Appellant,

v.

Jesse BROWN, Secretary of Veterans Affairs, Appellee.

No. 91–2211.

United States Court of Veterans Appeals.

April 22, 1993.

Patrick T. Tierney, St. Paul, MN, was on the brief, for appellant.

James A. Endicott, Jr., Gen. Counsel, David T. Landers, Acting Asst. Gen. Counsel, Andrew J. Mullen, Deputy Asst. Gen. Counsel, and Ralph G. Davis, Washington, DC, were on the pleadings, for appellee.

Before MANKIN, HOLDAWAY and IVERS, Associate Judges.

HOLDAWAY, Associate Judge:

Appellant, William O. Obert, appeals from an August 30, 1991, decision of the Board of Veterans' Appeals (BVA or Board) which denied service connection for multiple sclerosis (MS). The Board found that MS was not shown to have been present during service, nor to have manifested to a compensable degree within seven years following service. Furthermore, MS was not definitively diagnosed until 1987, almost 29 years following appellant's separation from service. In his appeal, appellant contends that the BVA erred in finding that MS was not shown during service, or within seven years following service. The Secretary of Veterans Affairs (Secretary) has filed a motion for summary affirmance. The Court will remand the matter for further adjudication.

## I. Background

Appellant served in the Air Force from June 1955 to December 1958. Appellant's military service records were apparently destroyed in a fire at the Personnel Records Center, St. Louis, Missouri.

Appellant testified that the onset of his symptoms occurred in 1956. He lost consciousness during a training class. He regained consciousness while in an ambulance en route to the hospital. Instead of being taken to the hospital, he requested that he be taken to see a dentist because he had a terrible toothache. The dentist could not find evidence of a toothache, and shortly thereafter, appellant's pain subsided. Appellant testified that he did not have any similar symptoms or incidents while he was in the service.

Following his discharge from service, appellant was employed as an air traffic controller. Appellant testified that in the fall of 1960 he noticed a change in his abilities which prevented him from becoming certified by the Chicago Airway Traffic Control Center.

A January 31, 1963, entry in the medical records indicates that appellant "continues to have numbness and pricking sensations in left hand associated [with] aches in post. lower neck about C7—worse on flexion of hand." There is no diagnosis in the record associated with this entry.

Due to a decrease in his abilities, appellant requested a voluntary demotion at his job on August 27, 1963. On September 10, 1963, appellant reported pain in the left inguinal area, and pain just before emptying his bladder. Appellant's demotion was granted on October 16, 1963. Shortly thereafter, on November 4, 1963, appellant was placed on extended sick leave. It was during this sick leave in 1963, that appellant claims he was seen by Dr. Grimm. At this time, his symptoms included headaches, near total loss of eyesight, vertigo, high fever, and speech difficulty. Appellant stated that Dr. Grimm diagnosed him with encephalitis or meningitis with sight loss. He returned to work on November 12, 1963. On November 18, 1963, appellant obtained a report from his doctor certifying that his vision had returned to 20/20. On February 25, 1964, appellant again requested a voluntary demotion.

On April 21, 1967, he complained of tenderness over his right eye. An October 21, 1968, entry in the medical records noted that appellant's "right eye sight failed for 7–10 days—less distinction of edges," and that his vision was "foggy," with a feeling of "fullness" in the right eye. In the same entry, it was noted that appellant complained of a nagging backache on and off for the past year.

On October 23, 1968, appellant was seen for blurred vision in his right eye. The same entry noted appellant had a history of blurred vision in his left eye in 1963, which gradually cleared after about six weeks. An entry on October 30, 1968, noted some decreased vision in the right eye on exertion. The right pupil was three millimeters larger than the left pupil.

On July 26, 1969, he complained of numbness in his lower left forearm. The numbness started suddenly. There was no pain at first, but then it gradually increased. Appellant also reported mild headaches and decreased vision in his right eye.

On February 16, 1971, appellant reported trouble with his left eye. He was experiencing "foggy" vision.

In 1987, appellant was diagnosed with "probable multiple sclerosis" by Dr. Webster. Appellant had been seen by Dr. Webster since the early 1980s, but was not diagnosed until 1987. Dr. Webster subsequently changed the diagnosis to "definite multiple sclerosis." While Dr. Webster does not state when the diagnosis changed, it was first noted in a letter dated October 31, 1989.

Appellant filed his application for compensation for service connection for MS in May 1989. Among the evidence submitted were two letters. The first one was from Dr. Peterson, dated August 15, 1989. Dr. Peterson treated appellant for a period of years beginning in October 1964, and ending in February 1972. In his August 1989 letter, Dr. Peterson stated that he had reviewed appellant's treatment records and he noted, " ... [A]s I look back on some of the problems and complaints that you had in those early years, I would think that a good case could be made for early symptoms of multiple sclerosis." The second letter was from Dr. Webster, dated April 26, 1991. Dr. Webster stated, " ... [T]he patient may have been having some symptoms of his multiple sclerosis for many years prior to the date of diagnosis." The evidence submitted included testimony by appellant and his wife at a personal hearing held in December 1990.

On August 30, 1991, the BVA denied service connection for MS. *William O. Obert*, BVA 91-____ (Aug. 30, 1991). The BVA found that MS was not definitively diagnosed until 29 years after service. The BVA further found that "a consistent pattern of pathologic signs associated with multiple sclerosis were not shown during service or manifested to a compensable degree within 7 years of the veteran's discharge from service." The letters from Drs. Peterson and Webster were found to be " ... not, by themselves, sufficiently persuasive to entitle the veteran to service connection for multiple sclerosis." The BVA noted that there was no indication in the medical records that MS was even suspected by the treating physicians in 1963, when appellant initially experienced symptoms of blurred vision or numbness in his left arm, nor in October 1963 when he was diagnosed with encephalitis/meningitis.

A timely appeal to this Court followed.

## II. Analysis

### A.

As a preliminary matter, the Court will address the propriety of attaching an excerpt from a medical treatise as an appendix to appellant's brief. Extensive factual argument in the brief was based on this treatise. The treatise was "new" evidence; it was not contained in the record before the Board. This Court is precluded by statute from considering any material which was not contained in the record before the Board. 38 U.S.C.A. § 7252(b) (West 1991); *Rogozinski v. Derwinski*, 1 Vet.App. 19 (1990). If appellant wishes to introduce new evidence that he has developed in the course of his appeal, he may place it in the record only by requesting that the primary finder of fact, namely the Board, reconsider its decision, attaching the "new" evidence to the request, or, in the alternative, appellant could use the "new" evidence to attempt to reopen his claim at the agency of original jurisdiction (regional office). This Court is a court of review that may consider only evidence that was in the record and before the Board in its adjudication. By attempting to introduce new medical evidence before the Court, and then arguing for reversal on the basis of that evidence, appellant was, in effect, placing this Court in the position of finding medical facts. That is not our function.

Counsel for the Secretary has a responsibility to protect the record. He should have made a motion to have the appendix stricken from the record on appeal. In this case, the Court, sua sponte, strikes the appendix from the brief. No consideration whatsoever will be given to this material.

### B.

Pursuant to 38 U.S.C.A. § 5107(a) (West 1991), a person who submits a claim

> ... for benefits under a law administered by the Secretary shall have the burden of submitting evidence sufficient to justify a belief by a fair and impartial

individual that the claim is well grounded.

A well-grounded claim is "a plausible claim, one which is meritorious on its own or capable of substantiation." *Murphy v. Derwinski*, 1 Vet.App. 78, 81 (1990).

■ Appellant has submitted a well-grounded claim. In his letter dated April 26, 1991, Dr. Webster stated that, " ... [T]he patient *may* have been having some symptoms of his multiple sclerosis for many years prior to the date of diagnosis." (Emphasis added.) Of course, as appellant "may" have been showing symptoms, the implication is he "may not have" been showing symptoms. Dr. Webster's statement is, therefore, speculative. *See Tirpak v. Derwinski*, 2 Vet.App. 609, 611 (1992). However, unlike *Tirpak*, where the only evidence supporting the claim was one letter from a doctor indicating that the veteran's death *"may or may not"* have been averted if medical personnel could have effectively intubated the veteran, in the present case, there is a second letter, from Dr. Peterson, who stated that after looking back at appellant's treatment records, he "would think that a *good case* could be made for early symptoms of multiple sclerosis." (Emphasis added.) This second opinion also contains within it seeds of doubt, but it is somewhat less speculative than the first one. Taken in conjunction with Dr. Webster's statement, it is sufficient to present a minimally well-grounded claim.

■ The presentation of a well-grounded claim triggers a necessity to seek *medical evidence* either to verify or not verify the claim. The Board may not simply reject the medical opinions given, equivocal though they may be, by using its own medical judgment. *Colvin v. Derwinski*, 1 Vet.App. 171, 175 (1991).

■ While the medical evidence submitted by appellant was sufficient to establish a claim, it was of such equivocal nature that the Board was correct in expressing doubts as to its sufficiency, and thus not approving a claim based on such speculative opinions. However, there was a duty to further develop the case and seek further medical evidence to be placed in the record that would either support or repudiate the evidence from Drs. Webster or Peterson.

The Secretary's motion is **DENIED,** and the matter is **REMANDED** to the Board for adjudication consistent with this opinion.