Citation Nr: 1438745 
Decision Date: 08/29/14 Archive Date: 09/03/14

DOCKET NO. 08-00 813 ) DATE
 )
 )

On appeal from the
Department of Veterans Affairs Regional Office in Huntington, West Virginia


THE ISSUES

1. Entitlement to an evaluation in excess of 20 percent for degenerative disc disease at L5-S1, prior to February 20, 2014.

2. Entitlement to an evaluation in excess of 40 percent for degenerative disc disease at L5-S1, since February 20, 2014.
 
3. Entitlement to an initial evaluation in excess of 10 percent for radiculopathy of the right lower extremity (previously rated as peripheral neuropathy of the right lower extremity), prior to February 20, 2014.

4. Entitlement to an initial evaluation in excess of 20 percent for radiculopathy of the right lower extremity (previously rated peripheral neuropathy of the right lower extremity), since February 20, 2014.
 
5. Entitlement to an initial evaluation in excess of 10 percent for radiculopathy of the left lower extremity (previously rated peripheral neuropathy of the left lower extremity), prior to February 20, 2014.

6. Entitlement to an initial evaluation in excess of 20 percent for radiculopathy of the left lower extremity (previously rated peripheral neuropathy of the left lower extremity), since February 20, 2014.


REPRESENTATION

Veteran represented by: Angela Thompson, Attorney at Law with the Dils Group


WITNESSES AT HEARING ON APPEAL

Veteran and B.B.


ATTORNEY FOR THE BOARD

T. S. Willie, Counsel


INTRODUCTION

The Veteran served on active duty from January 2002 to May 2003. 

This appeal comes before the Department of Veterans Affairs (VA) Board of Veterans Appeal (Board) from rating decisions of the VA Regional Office (RO). 

The Veteran was afforded a Travel Board hearing in October 2012 before the undersigned Veterans Law Judge sitting at Huntington, West Virginia. The transcript is of record. 

This case was remanded for further development in October 2009 and February 2013. The issue of entitlement to a total rating based on unemployability due to service connected disability was also remanded by the Board. In a February 20, 2014 rating decision, however, the Veteran's claim was granted. As the benefit sought on appeal has been granted, this issue is no longer before the Board. 

The Board has reviewed the Virtual VA and VBMS paperless claims processing systems and has included evidence pertinent to the appeal in the decision therein. 


FINDINGS OF FACT

1. Prior to February 20, 2014, degenerative disc disease at L5-S1 was not manifested by bed rest prescribed by a physician and treatment by a physician, and/or forward flexion of the thoracolumbar spine that was 30 degrees or less or favorable ankylosis of the entire thoracolumbar spine. 

2. Since February 20, 2014, degenerative disc disease at L5-S1 is not manifested by bed rest prescribed by a physician and treatment by a physician, and/or unfavorable ankylosis of the entire thoracolumbar spine. 

3. Prior to February 20, 2014, radiculopathy of the right lower extremity was manifested by at most mild impairment. 

4. Since February 20, 2014, radiculopathy of the right lower extremity is manifested by at most moderate impairment. 

5. Prior to February 20, 2014, radiculopathy of the left lower extremity was manifested by at most mild impairment. 

6. Since February 20, 2014, radiculopathy of the left lower extremity is manifested by at most moderate impairment. 





CONCLUSIONS OF LAW

1. Prior to February 20, 2014, the criteria for a rating higher than 20 percent for degenerative disc disease at L5-S1 were not met. 38 U.S.C.A. §§ 1155, 5103, 5103A, 5107 (West 2002 and Supp. 2013); 38 C.F.R. §§ 4.40, 4.45, 4.59, 4.71a, Diagnostic Code 5243 (2013).

2. Since February 20, 2014, the criteria for a rating higher than 40 percent for degenerative disc disease at L5-S1 have not been met. 38 U.S.C.A. §§ 1155, 5103, 5103A, 5107; 38 C.F.R. §§ 4.40, 4.45, 4.59, 4.71a, Diagnostic Code 5243.

3. Prior to February 20, 2014, the criteria for a rating higher than 10 percent for radiculopathy of the right lower extremity were not met. 38 U.S.C.A. §§ 1155, 5103, 5103A, 5107; 38 C.F.R. § 4.124a, Diagnostic Code 8520.

4. Since February 20, 2014, the criteria for a rating higher than 20 percent for radiculopathy of the right lower extremity have not been met. 38 U.S.C.A. §§ 1155, 5103, 5103A, 5107; 38 C.F.R. § 4.124a, Diagnostic Code 8520.

5. Prior to February 20, 2014, the criteria for a rating higher than 10 percent for radiculopathy of the left lower extremity were not met. 38 U.S.C.A. §§ 1155, 5103, 5103A, 5107; 38 C.F.R. § 4.124a, Diagnostic Code 8520.

6. Since February 20, 2014, the criteria for a rating higher than 20 percent for radiculopathy of the left lower extremity have not been met. 38 U.S.C.A. §§ 1155, 5103, 5103A, 5107; 38 C.F.R. § 4.124a, Diagnostic Code 8520.


REASONS AND BASES FOR FINDINGS AND CONCLUSIONS

Duties to notify and assist

The requirements of 38 U.S.C.A. §§ 5103 and 5103A have been met with regard to the issues decided herein. There is no issue as to providing an appropriate application or the completeness of the application. By correspondence dated in November 2005 and March 2006, VA advised the Veteran of the information and evidence needed to substantiate a claim. The letters provided notice of what part of that evidence is to be provided by the claimant, and what part VA will attempt to obtain. The Veteran was also provided information regarding the assignment of disability ratings and effective dates. 

VA has also satisfied its duty to assist. The claims folder contains service treatment records, VA medical records and VA examinations. No additional pertinent records are shown to be available, and the appellant does not argue otherwise.

For the foregoing reasons, the Board concludes that all reasonable efforts were made by VA to obtain evidence necessary to substantiate the claim. No further assistance to the Veteran with the development of evidence is required. 38 U.S.C.A. § 5103A(a)(2) ; 38 C.F.R. § 3.159(d). Accordingly, the Board will address the merits of the claims.

Analysis 

Disability evaluations are determined by evaluating the extent to which a veteran's service-connected disability adversely affects his ability to function under the ordinary conditions of daily life, including employment, by comparing his symptomatology with the criteria set forth in the Schedule for Rating Disabilities (rating schedule). 38 U.S.C.A. § 1155; 38 C.F.R. §§ 4.1, 4.2, 4.10. If two evaluations are potentially applicable, the higher evaluation will be assigned if the disability picture more nearly approximates the criteria required for that evaluation; otherwise, the lower rating will be assigned. 38 C.F.R. § 4.7.

In Fenderson v. West, 12 Vet. App. 119 (1999), the United States Court of Appeals for Veterans Claims (Court) held that evidence to be considered in the appeal concerning an initial assignment of a disability rating was not limited to that reflecting the then current severity of the disorder. The Court also discussed the concept of the 'staging' of ratings, finding that, in cases where an initially assigned disability evaluation has been disagreed with, it was possible for a veteran to be awarded separate percentage evaluations for separate periods based on the facts found during the appeal period. Id. at 126-127; see also Hart v. Mansfield, 21 Vet. App. 505 (2007). 
 
The basis of disability evaluation is the ability of the body as a whole, or of the psyche, or of a system or organ of the body to function under the ordinary conditions of daily life including employment. 38 C.F.R. § 4.10. In determining the degree of limitation of motion, the provisions of 38 C.F.R. §§ 4.10, 4.40 and 4.45 are for consideration. See DeLuca v. Brown, 8 Vet. App. 202 (1995).

Disability of the musculoskeletal system is primarily the inability, due to damage or infection in parts of the system, to perform the normal working movements of the body with normal excursion, strength, speed, coordination and endurance. Functional loss may be due to the absence or deformity of structures or other pathology, or it may be due to pain, supported by adequate pathology and evidenced by the visible behavior in undertaking the motion. Weakness is as important as limitation of motion, and a part that becomes painful on use must be regarded as seriously disabled. 38 C.F.R. § 4.40.

With respect to joints, in particular, the factors of disability reside in reductions of normal excursion of movements in different planes. Inquiry will be directed to more or less than normal movement, weakened movement, excess fatigability, incoordination, pain on movement, swelling, deformity or atrophy of disuse. 38 C.F.R. § 4.45.

The intent of the Rating Schedule is to recognize actually painful, unstable or malaligned joints, due to healed injury, as entitled to at least the minimum compensable rating for the joint. 38 C.F.R. § 4.59.

Lumbar Spine 

The Veteran appeals the denial of an evaluation in excess of 20 percent for degenerative disc disease at L5-S1 prior to February 2014 and an evaluation in excess of 40 percent thereafter. 

The Veteran's degenerative disc disease at L5-S1 is evaluated under Diagnostic Code 5243 evaluating intervertebral disc syndrome. Under this rating criteria, the evaluation of intervertebral disc syndrome (preoperatively or postoperatively) is to be made on the total duration of incapacitating episodes over the past 12 months. 

When rating based on incapacitating episodes, if there are incapacitating episodes having a total duration of at least one week but less than two week during the past 12 months, a minimum 10 percent rating is warranted. If there are incapacitating episodes having a total duration of at least two weeks but less than four weeks during the past 12 months, a 20 percent rating is warranted. If there are incapacitating episodes having a total duration of at least four weeks but less than six weeks during the past 12 months, a 40 percent rating is warranted. If there are incapacitating episodes having a total duration of at least six weeks during the past 12 months, a maximum 60 percent rating is warranted. 38 C.F.R. § 4.71a.

Note 1 to 38 C.F.R. § 4.71a, DC 5243 provides that an incapacitating episode is a period of acute signs and symptoms due to intervertebral disc syndrome that requires bed rest prescribed by a physician and treatment by a physician." Chronic orthopedic and neurologic manifestations" means orthopedic and neurologic signs and symptoms resulting from intervertebral disc syndrome that are present constantly, or nearly so. 

Note 2 to DC 5243 provides that when rating on the basis of chronic manifestations, the orthopedic disabilities will be rated under the most appropriate orthopedic diagnostic code or codes and the evaluation of neurologic disabilities will be done separately using the most appropriate neurologic diagnostic code or codes.

Under the general rating formula for diseases and injuries of the spine, a 20 percent rating is assigned for forward flexion of the thoracolumbar spine greater than 30 degrees but not greater than 60 degrees; or, forward flexion of the cervical spine greater than 15 degrees but not greater than 30 degrees; or, the combined range of motion of the thoracolumbar spine not greater than 120 degrees; or, the combined range of motion of the cervical spine not greater than 170 degrees; or, muscle spasm or guarding severe enough to result in an abnormal gait or abnormal spinal contour such as scoliosis, reversed lordosis, or abnormal kyphosis. 

A 30 percent rating is assigned for forward flexion of the cervical spine 15 degrees or less; or, favorable ankylosis of the entire cervical spine. 

A 40 percent rating is assigned for unfavorable ankylosis of the entire cervical spine; or, forward flexion of the thoracolumbar spine is 30 degrees or less; or, favorable ankylosis of the entire thoracolumbar spine.

A 50 percent rating is assigned for unfavorable ankylosis of the entire thoracolumbar spine; and 100 percent for unfavorable ankylosis of the entire spine. 

Note (1) to the rating formula specifies that any associated objective neurologic abnormalities, including, but not limited to, bowel or bladder impairment, should be separately evaluated under an appropriate diagnostic code. 

Note (2): (See also Plate V.) For VA compensation purposes, normal forward flexion of the cervical spine is zero to 45 degrees, extension is zero to 45 degrees, left and right lateral flexion are zero to 45 degrees, and left and right lateral rotation are zero to 80 degrees. Normal forward flexion of the thoracolumbar spine is zero to 90 degrees, extension is zero to 30 degrees, left and right lateral flexion are zero to 30 degrees, and left and right lateral rotation are zero to 30 degrees. The combined range of motion refers to the sum of the range of forward flexion, extension, left and right lateral flexion, and left and right rotation. The normal combined range of motion of the cervical spine is 340 degrees and of the thoracolumbar spine is 240 degrees. The normal ranges of motion for each component of spinal motion provided in this note are the maximum that can be used for calculation of the combined range of motion. 

Initially, the Board notes that a higher rating is not warranted based on incapacitating episodes for any time period during this appeal. In this regard, in October 2004 the Veteran reported continuous back pain. He claimed being bedridden for periods ranging from two days to over three weeks on at least five occasions during that year. His mother has also submitted statements asserting that the Veteran is bedridden about 90 percent of the time. The Board notes, however, that there is no showing of bed rest that is prescribed by a physician and treated by a physician. Although the December 2009 VA examiner stated there were incapacitating episodes of the spine disease, when asked to list each incapacitating episodes during the past 12 months, the examiner stated "none." The examiner then affirmatively found that there were no incapacitating episodes due to intervertebral disc syndrome. In light of the lack of evidence demonstrating any episodes requiring bed rest prescribed by a physician and treatment by a physician for IVDS, the Board finds that a higher rating under the Formula for Rating IVDS Based on Incapacitating Episodes is not warranted.

The Board has also considered whether a higher rating is warranted under the general rating formula for diseases and injuries of the spine for both periods on appeal. In doing so, the Board has found that prior to February 20, 2014 a rating higher than 20 percent disabling was not warranted for the lumbar spine. To that end, the November 2005 VA examination disclosed flexion limited to 75 degrees with pain starting at 45 degrees. In a private March 2006 examination, the Veteran was shown to have flexion that was limited to approximately 30 degrees. In another private examination in July 2006, just months later, the lumbar spine was described as having good range of motion although there was some discomfort with extreme range of motion. The December 2009 VA examination revealed flexion that was limited to 50 degrees with no objective evidence of pain with active motion. 

While the Veteran complained of pain, stiffness, weakness and fatigue, and functional limitations resulting therefrom during this period, the overall record for this period of time reflects that the Veteran's lumbar spine disability was manifested by forward flexion limited to at most 45 degrees. The Board recognizes that flexion of the lumbar spine was found to be limited to "approximately 30 degrees" in March 2006 by a private examiner. The Board notes, however, that this finding appears to an anomaly rather than a true depiction of the Veteran's disability during this period. In this regard, examinations before and after March 2006 disclose lumbar flexion limited to at most 45 degrees. The Board also notes that the use of the word "approximately" renders the finding speculative at best. Medical evidence that is speculative, general or inconclusive in nature cannot support a claim. See Obert v. Brown, 5 Vet. App. 30, 33 (1993). The more probative evidence discloses that the criteria for a rating higher than 20 percent were not met during this time. When the record is viewed as a whole, forward flexion of the thoracolumbar spine 30 degrees or less and/or favorable ankylosis of the entire thoracolumbar spine was not shown during this period of time.

Since February 20 2014, the overall record reflects that the Veteran's lumbar spine disability is manifested by forward flexion limited to at most 30 degrees. During the February 2014 VA examination, the Veteran had flexion to 40 degrees with pain at 30 degrees. A review of the record shows that a rating higher than 40 percent for this time is not warranted as the evidence is devoid of a showing of unfavorable ankylosis of the entire thoracolumbar spine. For definitional purposes, ankylosis is a fixation of the joint. Given the ranges of motion reported above, a higher rating is not warranted on this basis. Even when considering the effects of pain and other factors of functional loss, there is no probative medical or lay evidence of record establishing that the Veteran's range of motion findings are commensurate with anything akin to ankylosis. As such, the criteria for a rating higher than 40 percent for this time period are not met. 

In reaching these conclusions, the Board has considered the requirements of 38 C.F.R. §§ 4.40, 4.45, 4.59; DeLuca v. Brown, 8 Vet. App. 202, 204-7 (1995). Neither the lay or medical evidence, however, reflects that the requirements for a higher rating were met during the periods addressed above. To the extent that the Veteran reported lumbar pain during this time, the Board notes that the current ratings contemplate periarticular pathology productive of painful motion. 38 C.F.R. § 4.59.

With regard to neurologic abnormalities, the Board notes that the Veteran is already separately rated for radiculopathy of the left and right lower extremities. No other neurologic manifestations originating from the lumbar spine have been identified. To that end, although he reported erectile dysfunction during the December 2009 VA examination, the etiology was found to be unrelated to the lumbar spine. Rather, the examiner found that it was unclear. During the February 2014 VA examination, the Veteran was found to have radiculopathy but no other neurologic abnormalities were identified as related to the lumbar spine. 

The Board also notes that the February 2014 VA examination disclosed that the Veteran did not have any scars related to his lumbar spine. 

Right and Left Lower Extremities 

The Veteran appeals the denial of an initial evaluation in excess of 10 percent for radiculopathy of the right and left lower extremity prior to February 20, 2014 and an initial evaluation in excess of 20 percent thereafter. 

The Veteran disability is rated under Diagnostic Code 8520. Under Diagnostic Code 8520, incomplete paralysis of the sciatic nerve warrants a 10 percent evaluation when mild, a 20 percent evaluation when moderate, a 40 percent evaluation when moderately severe, and a 60 percent evaluation when severe, with marked muscular atrophy. Complete paralysis of the sciatic nerve warrants an 80 percent evaluation where the foot dangles and drops, there is no active movement possible of muscles below the knee and flexion of the knee is weakened or (very rarely) lost. 38 C.F.R. § 4.124a. 

Under 38 C.F.R. § 4.124a , the term "incomplete paralysis" indicates a degree of lost or impaired function substantially less than the type picture for complete paralysis given with each nerve, whether due to varied level of the nerve lesion or to partial regeneration. When the involvement is wholly sensory, the rating should be for the mild, at most, the moderate degree. The ratings for peripheral nerves are for unilateral involvement; when bilateral, combine with application of the bilateral factor.

The December 2003 VA examination revealed essentially normal findings and no evidence of sciatica at that time. The November 2005 VA examination disclosed normal muscle tone. Sensory examination showed impaired vibration and light touch of the legs, and absent pain and position sense. Reflex examination was normal. Lasegues's sign was negative. 
During the March 2006 VA examination, the Veteran reported tingling and numbness of the lower extremities. Examination revealed abnormal sensory findings to include decreased vibration. There was no motor function impairment, muscle atrophy, abnormal muscle tone and/or abnormal plantar reflex. Deep tendon reflexes were 2+ and his gait was normal. 

The July 2006 private examination disclosed deep tendon reflexes were 2+ and symmetrical. There was no atrophy of the extremities, and sensory examination was intact. He had a normal gait. 

Muscle tone was normal and there was no muscle atrophy or abnormal movement shown during the December 2009 VA examination. The lower extremities had 1/2 vibrations and light touch, and 2/2 position sense. Babinski reflex was normal, and gait and balance were normal. All muscles tested in the lower tissue were found to be normal. The examiner found that it was an unremarkable electordiagnositc study and that there was no electrodiagnostic evidence of lower extremity radiculopathy based on the testing results. He had normal sensory findings in October 2013. 

In light of the evidence of record, the Board finds prior to February 20, 2014, the Veteran's neurologic impairment was comparable to mild incomplete paralysis of the sciatic nerve, but it was not comparable to moderate incomplete paralysis. Hence, a 10 percent evaluation and no more was warranted for this period pursuant to 38 C.F.R. § 4.124a, Diagnostic Code 8520. In reaching this determination, the Board has considered the guidance established in 38 C.F.R. §§ 4.120, 4.123, and 4.124. Here, the findings consist of complaints of tingling and numbness. While the Veteran is shown to have had decreased vibration and light touch, the remaining examination findings were essentially normal as there was normal reflex and muscle tone. There was also no motor function impairment, muscle atrophy, and/or abnormal plantar reflex. Hence, the constellation of manifestations expected for moderate impairment has not been shown during this time. 

The Board also finds against a rating higher than 20 percent for radiculopathy of the right and left lower extremity since February 20, 2014. To that end, the VA examination disclosed severe intermittent pain but only moderate numbness and paresthesias and/or dysesthesias of the lower extremities. He had normal muscle strength and no muscle atrophy. Deep reflexes were normal, and with the exception of decreased sensation in the foot/toes the sensory examination was essentially normal. His gait was also normal. The VA examiner found the severity of the Veteran's incomplete paralysis was moderate for the left and right extremities. The Board associates the medical findings described above as showing "moderate" incomplete paralysis of the sciatic nerve, rather than "moderately severe." The constellation of manifestations expected for moderately severe radiculopathy, is not present for the left or right lower extremity. In reaching this determination, the Board has considered the guidance established in section 4.120, 4.123 and 4.124. When the evidence is viewed as a whole, however, the criteria for the next higher evaluation have not been met. 

All Claims 

The Board has considered the lay statements of record that discuss the Veteran's functional limitations from his disabilities. The Board finds that the Veteran has presented competent and credible testimony regarding the nature and extent of his disabilities to include his reports of pain, numbness and functional impairments. Neither the lay or medical evidence, however, reflects that the requirements for a higher rating were met during any period addressed above. The Board has afforded greater probative value to the VA examinations than the Veteran's reports of symptomatology. The examinations were conducted by medical professionals with the expertise to comment and opine on the matters at issue. The examiners reviewed the records, which included the Veteran's contentions, and conducted a complete physical examination. The medical findings of record are also well reasoned and supported by the historical record. 

The Board has considered all potentially applicable provisions of 38 C.F.R. Parts 3 and 4, whether or not they have been raised by the appellant or his representative, as required by Schafrath, 1 Vet. App. 589. The Board has found no section that provides a basis upon which to assign a higher disability rating for his disability. Accordingly, the claims are denied.

Regarding referral for extraschedular consideration, consideration of referral for an extraschedular rating requires a three-step inquiry. See Thun v. Peake, 22 Vet. App. 111, 115 (2008), aff'd sub nom. Thun v. Shinseki, 572 F.3d 1366 (Fed. Cir. 2009). The first question is whether the schedular rating adequately contemplates the veteran's disability picture. Thun, 22 Vet. App. at 115. If the criteria reasonably describe the claimant's disability level and symptomatology, then the claimant's disability picture is contemplated by the rating schedule, the assigned schedular evaluation is, therefore, adequate, and no referral is required. If the schedular evaluation does not contemplate the claimant's level of disability and symptomatology and is found inadequate, then the second inquiry is whether the claimant's exceptional disability picture exhibits other related factors such as those provided by the regulation as governing norms. If the Veteran's disability picture meets the second inquiry, then the third step is to refer the case to the Under Secretary for Benefits or the Director of the Compensation and Pension Service to determine whether an extraschedular rating is warranted. 

Most importantly, at the outset, the manifestations of his back and neurological disabilities on appeal are contemplated by the schedular criteria. The Veteran has not described any additional, unusual symptomatology for each disability on appeal that is not already contemplated by the schedular rating criteria. For instance, for the back, the Board has considered the Veteran's limitation of motion, pain, and all other factors of functional loss listed in 38 C.F.R. §§ 4.40 and 4.45 and 4.59 and DeLuca v. Brown, 8 Vet. App. 202, 206 (1995) in considering his current ratings. There is no reason to believe that the average industrial impairment from the disabilities would be in excess of that contemplated by the schedular criteria. Therefore, referral of the case for extra-schedular consideration is not in order.


ORDER

Entitlement to an evaluation in excess of 20 percent for degenerative disc disease at L5-S1, prior to February 20, 2014 is denied. 

Entitlement to an evaluation in excess of 40 percent for degenerative disc disease at L5-S1, since February 20, 2014 is denied. 
 
Entitlement to an initial evaluation in excess of 10 percent for radiculopathy of the right lower extremity, prior to February 20, 2014 is denied. 

Entitlement to an initial evaluation in excess of 20 percent for radiculopathy of the right lower extremity, since February 20, 2014 is denied. 
 
Entitlement to an initial evaluation in excess of 10 percent for radiculopathy of the left lower extremity, prior to February 20, 2014 is denied. 

Entitlement to an initial evaluation in excess of 20 percent for radiculopathy of the left lower extremity, since February 20, 2014 is denied. 



____________________________________________
CHERYL L. MASON
Veterans Law Judge, Board of Veterans' Appeals



Department of Veterans Affairs