Citation Nr: 1744020 
Decision Date: 09/27/17 Archive Date: 10/10/17

DOCKET NO. 15-23 143 ) DATE
 )
 )

On appeal from the
Department of Veterans Affairs Regional Office in Boston, Massachusetts


THE ISSUES

1. Entitlement to a rating in excess of 10 percent for bilateral hearing loss. 

2. Entitlement to service connection for residuals of dengue fever.


REPRESENTATION

Veteran represented by: Massachusetts Department of Veterans Services


ATTORNEY FOR THE BOARD

A. Kutrolli, Associate Counsel





INTRODUCTION

The Veteran served honorably in the United States Army from May 1966 to May 1969. 

These matters come before the Board of Veterans' Appeals (Board) on appeal from a March 2013 rating decision of the Department of Veterans Affairs (VA) Regional Office (RO) in Boston, Massachusetts.

This appeal has been advanced on the Board's docket pursuant to 38 C.F.R. § 20.900(c) (2016). 38 U.S.C.A. § 7107(a)(2) (West 2014).

The issue of entitlement to service connection for residuals of dengue fever is addressed in the REMAND portion of the decision below and is REMANDED to the Agency of Original Jurisdiction (AOJ).


FINDING OF FACT

The Veteran's bilateral hearing loss has been manifested by no worse than Level II hearing impairment for the right ear and no worse than Level IX hearing impairment for the left ear.


CONCLUSION OF LAW

The criteria for a rating in excess of 10 percent for bilateral hearing loss have not been met. 38 U.S.C.A. §§ 1155, 5103, 5103A, 5107 (West 2014); 38 C.F.R. §§ 3.159, 3.385, 4.1-4.14, 4.85, 4.86, Diagnostic Code 6100 (2016).






REASONS AND BASES FOR FINDING AND CONCLUSION

I. VA's Duties to Notify and Assist 

Pursuant to the Veterans Claims Assistance Act (VCAA), VA has duties to notify and assist claimants in substantiating a claim for VA benefits. 38 U.S.C.A. §§ 5102, 5103, 5103A, 5107 (West 2014); 38 C.F.R. §§ 3.102, 3.156(a), 3.159 (2016).

Neither the Veteran nor his/her representative has raised any issues with the duty to notify or duty to assist. See Scott v. McDonald, 789 F.3d 1375, 1381 (Fed. Cir. 2015) (holding that "the Board's obligation to read filings in a liberal manner does not require the Board . . . to search the record and address procedural arguments when the veteran fails to raise them before the Board."); Dickens v. McDonald, 814 F.3d 1359, 1361 (Fed. Cir. 2016) (applying Scott to a duty to assist argument).

II. Increased Rating for Bilateral Hearing Loss

Disability ratings are determined by application of the criteria set forth in VA's Schedule for Rating Disabilities, which is based on average impairment of earning capacity. 38 U.S.C.A. § 1155 (West 2014); 38 C.F.R. Part 4 (2016). When a question arises as to which of two ratings applies under a particular Diagnostic Code, the higher rating is assigned if the disability more closely approximates the criteria for the higher rating. Otherwise, the lower rating applies. 38 C.F.R. § 4.7 (2016). After careful consideration of the evidence, any reasonable doubt remaining is resolved in favor of the Veteran. 38 C.F.R. § 4.3 (2016). 

Where entitlement to compensation already has been established and an increase in the disability rating is at issue, it is the present level of disability that is of primary concern. Francisco v. Brown, 7 Vet. App. 55 (1994). Nevertheless, the Board acknowledges that a claimant may experience multiple distinct degrees of disability that might result in different levels of compensation from the time the increased rating claim was filed until a final decision is made. Hart v. Mansfield, 21 Vet. App. 505 (2007). The analysis in the following decision is therefore undertaken with consideration of the possibility that different ratings may be warranted for different time periods.

Disability ratings for hearing loss are derived from a mechanical application of the rating schedule to the numeric designations assigned after audiometric evaluations are performed. See Lendenmann v. Principi, 3 Vet. App. 345, 349 (1992). Ratings for hearing loss range from noncompensable to 100 percent based on impairment of hearing acuity as measured by speech discrimination tests (Maryland CNC) and puretone audiometry tests in the frequencies 1000, 2000, 3000, and 4000 Hertz. 38 C.F.R. § 4.85, Diagnostic Code 6100. The results are charted on Table VI or Table VIa. The rating schedule establishes 11 auditory acuity levels designated from Level I (normal hearing) through Level XI (profound deafness). 38 C.F.R. § 4.85(h). Table VII prescribes the disability rating based on the relationship between the values for each ear derived from Table VI or VIa. 38 C.F.R. § 4.85(e). 

In this case, the Veteran is currently assigned a 10 percent disability rating for his bilateral hearing loss. After filing the instant request for an increased rating, the Veteran was afforded VA audiological examinations in July 2011 and May 2015. Based on the audiometric findings of the July 2011 exam, the Veteran had a speech discrimination score of 95% in the right ear with an average decibel loss of 61.25. The left ear had a speech discrimination score of 70% with an average decibel loss of 65. Using Table VI, the results equate to Level II in the right ear and Level V in the left ear. When these results are applied to Table VII, the audiometric findings result in a 10 percent rating. Thus, the July 2011 exam does not support a higher rating. 

Similarly, the May 2015 exam does not support a higher rating. Based on the audiometric findings of the May 2015 exam, the Veteran had a speech discrimination score of 96% in the right ear with an average decibel loss of 68. His left ear had a speech discrimination score of 50% with an average decibel loss of 78. Using Table VI, the results equate to Level II in the right ear and Level IX in the left ear. When these results are applied to Table VII, the audiometric findings again result in a 10 percent rating. 

The record also contains an audiological progress note from the VA Medical Center (VAMC) in Boston, Massachusetts, which does not support a higher rating. On that exam, the Veteran had a speech discrimination score of 92% in the right ear with an average decibel loss of 58. The left ear had a speech discrimination score of 60% with an average decibel loss of 67. Using Table VI, the results equate to Level II in the right ear and Level VII in the left ear. When these results are applied to Table VII, the audiometric findings result in a 10 percent rating. 

In Martinak v. Nicholson, 21 Vet. App. 447 (2007), the Court held that in addition to dictating objective test results, a VA audiologist must fully describe the functional effects caused by a hearing disability in his or her final report. The May 2015 VA examiner noted that due to his hearing loss, the Veteran had continued difficulty hearing in most listening situations, especially in noise. As reported by the Veteran, he found it hard to hear in the car with road noise in the background. To the extent the Veteran has complaints of impairment in his daily life, his inability to hear is contemplated by the hearing loss criteria.

Upon review, the Board finds that the evidence does not include any audiological examination results demonstrating a higher level of bilateral hearing loss at any time during the pendency of the appeal. The Board finds the 10 percent rating currently assigned for the Veteran's bilateral hearing loss accurately reflects his disability picture, and a higher disability rating is not appropriate. 

Recently, the Court held that the rating criteria for hearing loss contemplates the functional effects of decreased hearing, as well as difficulty understanding speech, in an everyday work environment. See Doucette v. Shulkin, 28 Vet. App. 366 (2017). Per the Court's holding, when a claimant's hearing loss results in an inability to hear or understand speech or to hear other sounds in various contexts, those effects are contemplated by the schedular rating criteria. Accordingly, the Board finds that the Veteran's reported symptoms of difficulty hearing and understanding speech in the presence of background or environmental noise, is a symptoms contemplated in the current schedular rating criteria. While the Board is sympathetic to the Veteran's subjective report of difficulty hearing under situational circumstances, unfortunately such reports cannot be the basis for an increased rating. The Board is bound to apply the VA rating schedule, under which the rating criteria are defined by audiometric test findings involving hearing acuity in a controlled laboratory environment. Therefore, the evidence of record does not warrant a higher rating.

In conclusion, the Board has considered the benefit of the doubt doctrine; however, as the preponderance of the evidence is against the Veteran's claim, that doctrine is not applicable, and rating in excess of 10 percent for bilateral hearing loss is denied. See 38 U.S.C.A. § 5107 (b); Gilbert v. Derwinski, 1 Vet. App. 49, 54-56 (1990). 


ORDER

A rating in excess of 10 percent for bilateral hearing loss is denied. 


REMAND

Additional development is necessary before the Veteran's service connection claim for residuals of dengue fever can be decided. In this case, the Veteran's service treatment records show no complaints, treatment or diagnosis of dengue fever or any condition that could have represented undiagnosed dengue fever. However, he submitted correspondence that was dated by the post office in August of 1967. This letter explained that the Veteran was hospitalized during service for "jungle virus." A VA infectious diseases examination dated May 13, 2015, contains a medical opinion that the Veteran's treatment in service for jungle virus was at least as likely as not dengue fever; however, this examiner noted that the dengue fever/infection had been inactive since 1967. 

The May 2015 examiner also noted that the Veteran had antiphospholipid syndrome (APS) as secondary to the infection, as well as two cerebrovascular accidents (CVA or stroke) related to a coagulopathy disorder from the antiphospholipid syndrome. Symptoms of the CVA were noted as including right sided weakness, cognitive impairment, and depression. Finally, the examiner opined that the APS, which reportedly caused the CVA, was due to the dengue fever/infection because dengue fever (as well as other infectious agents) was one possible infectious agent that could contribute to APS. However, medical opinions expressed in terms of "may" or "could be" are too speculative to be of probative value. See, e.g., Warren v. Brown, 6 Vet. App. 4, 6 (1993) (finding physician's statement that the Veteran's psychiatric disorder "could have been" caused by active service was too speculative); Obert v. Brown, 5 Vet. App. 30, 33 (1993) (stating that a medical opinion expressed in terms of "may" also implies "may not," and is too speculative). Thus, this opinion is inadequate. 

Subsequently, a June 4, 2015, central nervous system examination conducted by a neurologist stated that there is insufficient data to show a link between dengue fever and APS. While APS is a well known cause of strokes, the neurologist stated that the source referenced by the May 2015 examiner merely suggested that dengue fever/infection was one of many possible infectious agents that could contribute to acute APS. Additionally, the neurologist noted that the Veteran was not diagnosed with APS until 2009, approximately 40 years after service. The neurologist added that, contrary to the May 2015 examiner's findings, the Veteran did not suffer from an intracerebral bleed, but rather an ischemic event (i.e., blood clot in a blood vessel in the brain). The neurologist also averred that the stroke was due to the Veteran being taken off antiplatelet and anticoagulant therapy 10 days prior to a prostate biopsy in 2014, which resulted in a stroke just four days later. Ultimately, the examining neurologist opined that the Veteran's stroke was less likely than not due to dengue fever. 

However, the June 4, 2015, medical opinion, too, is inadequate to resolve this matter because the examiner did not provide adequate support or rationale for his opinion that the Veteran's stroke was not related to the non-specific white matter changes seen on MRI. Also, the examiner failed to render an opinion as to whether the Veteran's hypertension, which pre-existed the stroke by almost 10 years, was caused by the dengue fever/infection from 1967. If so, then an opinion is necessary to determine if the hypertension also caused the stroke. 

Accordingly, the case is REMANDED for the following action:

(Please note, this appeal has been advanced on the Board's docket pursuant to 38 C.F.R. § 20.900(c). Expedited handling is requested.)

1. Obtain a medical opinion from an appropriately qualified physician to determine whether the Veteran has residuals from dengue fever. The physician should review the claims file and set forth supporting facts and provide a thorough rationale for all opinions expressed. If any of the requested opinions cannot be provided without resorting to speculation, the physician should explain why an opinion cannot be provided (e.g., lack of sufficient information, limits of medical knowledge, etc.). The physician should provide the following opinions:

a. Is it at least as likely as not (50% probability or greater) that the Veteran's hypertension was caused by his dengue fever/infection in 1967, and is therefore a residual?

b. If so, is it at least as likely as not (50% probability or greater) that the Veteran's hypertension either independently, or together with the Veteran's APS, caused the Veteran's stroke? 

c. Is it at least as likely as not (50% probability or greater) that the non-specific white matter changes seen on MRI and identified during the June 4, 2015, examination are related to the Veteran's dengue fever/infection in 1967?

d. If so, is it at least as likely as not (50% probability or greater) that the Veteran's stroke in December 2014 was due to the non-specific white matter changes? 

2. Then, readjudicate the claim. If the decision remains adverse to the Veteran, issue a supplemental statement of the case and allow the applicable time for a response. After the Veteran is given an opportunity to respond, the case should be returned to the Board.

The appellant has the right to submit additional evidence and argument on the matters the Board has remanded. Kutscherousky v. West, 12 Vet. App. 369 (1999).

This claim must be afforded expeditious treatment. The law requires that all claims that are remanded by the Board for additional development or other appropriate action must be handled in an expeditious manner. See 38 U.S.C.A. §§ 5109B, 7112 (West 2014).




______________________________________________
LESLEY A. REIN
Veterans Law Judge, Board of Veterans' Appeals


Department of Veterans Affairs