﻿Citation Nr: AXXXXXXXX
Decision Date: 03/13/19 Archive Date: 03/13/19

DOCKET NO. 180730-165
DATE: March 13, 2019

ORDER

Readjudication of the claim for service connection for posttraumatic stress disorder (PTSD) is warranted.

Entitlement to service connection for PTSD is denied.

Entitlement to service connection for conjunctivitis of the left eye is denied.

Entitlement to service connection for residuals of right eye trauma is denied.

Entitlement to service connection for bilateral hearing loss is denied. 

REMANDED

Entitlement to service connection for glaucoma is remanded.

Entitlement to service connection for bilateral tinea pedis is remanded.

Entitlement to service connection for human papilloma virus (HPV) is remanded.

Entitlement to service connection for left eye proptosis or ptosis is remanded.

FINDINGS OF FACT

1. New evidence was received after the April 2016 denial that is relevant to the issue of entitlement to service connection for PTSD.

2. The preponderance of the competent evidence of record is against a finding that the Veteran has PTSD.

3. The preponderance of the competent evidence of record is against a finding that the Veteran has a current diagnosis of conjunctivitis of the left eye.

4. The preponderance of the competent evidence of record is against a finding that the Veteran has any current residuals of inservice right eye trauma.

5. A hearing loss disability was not evident in service or in the year following service, and a current diagnosis of hearing loss disability is not shown to have been caused by any in-service event.

CONCLUSIONS OF LAW

1. The criteria for readjudicating the claim for service connection for PTSD have been met. Veterans Appeals Improvement and Modernization Act, Pub. L. No. 115-55, § 5108, 131 Stat. 1105 (2017).

2. The criteria for service connection for PTSD have not been met. 38 U.S.C. §§ 1110, 1131; 38 C.F.R. §§ 3.303, 3.304.

3. The criteria for service connection for conjunctivitis of the left eye have not been met. 38 U.S.C. §§ 1110, 1131; 38 C.F.R. § 3.303.

4. The criteria for service connection for residuals of right eye trauma have not been met. 38 U.S.C. §§ 1110, 1131; 38 C.F.R. § 3.303.

5. The criteria for service connection for bilateral hearing loss disability have not been met. 38 U.S.C. §§ 1110, 1131; 38 C.F.R. §§ 3.303, 3.307, 3.309, 3.385.

REASONS AND BASES FOR FINDINGS AND CONCLUSIONS

On August 23, 2017, the President signed into law the Veterans Appeals Improvement and Modernization Act, Pub. L. No. 115-55 (to be codified as amended in scattered sections of 38 U.S.C.), 131 Stat. 1105 (2017), also known as the Appeals Modernization Act (AMA). This law creates a new framework for Veterans dissatisfied with VA’s decision on their claim to seek review. The Veteran chose to participate in VA’s test program RAMP, the Rapid Appeals Modernization Program. This decision has been written consistent with the new AMA framework.

The Veteran served on active duty from June 1964 to June 1966. The Veteran selected the Higher-Level Review lane when he submitted the RAMP election form. Accordingly, the June 2018 RAMP rating decision considered the evidence of record as of the date VA received the RAMP election form. The Veteran timely appealed this RAMP rating decision to the Board and requested direct review of the evidence considered by the Agency of Original Jurisdiction (AOJ).

Regarding the left eye proptosis/ptosis issue, the Veteran submitted a claim for service connection for proptosis. The AOJ discussed both proptosis and ptosis in the June 2018 rating decision. The Board will handle both issues together. 

The new and material evidence issue regarding PTSD has been recharacterized to reflect the new evidentiary standard under the AMA. Pub. L. No. 115-55, § 5108, 131 Stat. 1105, 1109.

New and Relevant Evidence

The Veteran contends that he submitted evidence with his legacy system petition to reopen a claim for service connection for PTSD that is new and relevant and warrants readjudication of the issue.

VA will readjudicate a claim if new and relevant evidenced is presented or secured. AMA, Pub. L. No. 115-55, § 5108, 131 Stat. 1105, 1109. “Relevant evidence” is evidence that tends to prove or disprove a matter in issue. AMA, Pub. L. No. 115-55, § 101(35), 131 Stat. 1105, 1105.

The questions in this case are whether the evidence has been presented after the prior final denial of his claim for service connection for PTSD in the legacy system, and if so, whether that evidence is new and relevant to his claim.

Service connection for PTSD was denied in August 2013 and April 2016 rating decisions based on a finding that the Veteran did not have a diagnosis of PTSD. The Board finds that new evidence has been presented after the most recent (April 2016) prior final rating decision in the legacy system that is relevant to his claim. Specifically, VA outpatient treatment records dated from 2016 to 2018 and the report from a June 2017 VA psychiatric examination were not previously of record and may prove or disprove the current diagnosis element of the claim for service connection for PTSD. Readjudication of the claim is warranted.

Service Connection

Service connection may be granted for a disability resulting from disease or injury incurred in or aggravated by active service. 38 U.S.C. § §§ 1110, 1131; 38 C.F.R. § 3.303. Entitlement to service connection requires evidence of three elements: (1) a current disability; (2) in-service incurrence or aggravation of a disease or injury; and (3) a causal relationship or nexus between the current disability and the disease or injury incurred or aggravated during active service. Shedden v. Principi, 381 F.3d 1163, 1166-67 (Fed. Cir. 2004).

PTSD

The Veteran seeks service connection for PTSD based on the experiences he encountered while serving in the Republic of Vietnam. His service personnel records confirm he had service in the Republic of Vietnam from August 1965 to June 1966.

VA regulations provide that service connection for PTSD requires medical evidence of a PTSD diagnosis in accordance with DSM-5. 38 C.F.R. § 3.304(f). The Veteran’s service treatment records (STRs) do not contain a diagnosis of PTSD under these provisions. 

The Veteran underwent VA examinations in 2012, 2016 and 2017. The examiners opined that the Veteran did not meet the criteria for a diagnosis of PTSD. See May 2012, January 2016 and June 2017 VA PTSD examination reports. Instead, the May 2012 VA examiner diagnosed an anxiety disorder not otherwise specified (NOS) and found that this was related to a postservice motor vehicle accident (MVA) that the Veteran experienced as a truck driver. In reaching that conclusion, the May 2012 VA examiner considered the Vietnam-related stressors reported by the Veteran at that examination and acknowledged that he reported having some “combat-related anxiety symptoms” as well, but ultimately found that the majority of the Veteran’s distress was focused on phobic fears of driving, heights, and small spaces, which was related to his postservice MVA. The January 2016 VA examiner similarly found that the Veteran did not meet the diagnostic criteria for PTSD, and instead diagnosed an anxiety disorder NOS, which she found to be in remission. The January 2016 VA examiner noted that the Veteran did not report any specific military stressors during that examination, although she acknowledged that he had done so during previous evaluations. Finally, the June 2017 VA examiner gave the Veteran a diagnosis of unspecified anxiety disorder and opined that this was less as likely as not incurred in or caused by the Veteran’s service in the Republic of Vietnam. The June 2017 VA examiner explained that the Veteran reported avoidance, arousal, and re-experiencing symptoms that were inconsistently experienced. His reports of frequency of nightmares was also inconsistent from his reports in previous VA appointments. Additionally, it was noted that the Veteran reported occasional anxiety while driving, which was connected to a postservice MVA. 

The Veteran asserts that the June 2017 VA examination was inadequate because the examiner did not review his complete military or postservice treatment records and made a diagnosis in less than 30 minutes. The Veteran further asserts he should be awarded service connection based on VA treatment records, which include a diagnosis of PTSD. The Board acknowledges that the Veteran’s VA treatment records include a diagnosis of PTSD, and that is indicated that the diagnosis has been made pursuant to the DSM-5. However, it is significant to note that the Veteran has a long history of mental health treatment with VA, and it was not until more recently that PTSD was diagnosed. In August 1998, it was noted that the Veteran served in Vietnam, but also indicated that he did not endorse PTSD symptom. The Veteran reported that he tried not to think about the war, and instead endorsed symptoms of generalized anxiety, which had worsened in the last 10 years, and some phobic symptoms. An anxiety disorder was diagnosed. In November 2006 and June 2012, the Veteran had a negative PTSD screens as he answered “No” to two of the four questions asked. 

Later in June 2012, the Veteran sought VA treatment for high blood pressure. During this visit, his past medical history was noted as being inclusive of “anxiety/PTSD,” and from this date forward, the Veteran’s mental health treatment records have included a diagnosis of PTSD. Despite the annotation in his records that the Veteran has PTSD under the DSM-5, the Veteran’s mental health treatment providers have not indicated how each of the criterion for a PTSD diagnosis have been met. By contrast, the May 2012, January 2016, and June 2017 VA examiners clearly outline in their VA examination reports which criterion were not met preventing them from diagnosing PTSD. For example, the June 2017 VA examiner found that Criterion A and Criterion B were met, as there was evidence that the Veteran directly experienced traumatic events in service and also witnessed, in person, traumatic events as they occurred to others. He also experienced recurrent distressing dreams in which the content and/or affect of the dreams were related to his inservice traumatic events. However, no further criterions were met as the Veteran did not experience persistent avoidance of stimuli associated with the traumatic event, have any negative alternations in cognitions and mood associated with the traumatic events, or marked alterations in arousal and reactivity associated with the traumatic events. 

Although the Veteran has asserted that the June 2017 VA examination was inadequate because the examiner was not thorough, the Board disagrees. A review of the examination report shows that the June 2017 VA examiner interviewed the Veteran and conducted a proper mental status evaluation. The June 2017 VA examiner also reviewed the Veteran’s claims file and VA treatment records, and recognized that they included a diagnosis of PTSD. However, even with consideration of that evidence, it was the examiner’s opinion that the Veteran did not meet the diagnostic criteria for PTSD under the DSM-5 criteria. 

As the May 2012, January 2016, and June 2017 VA examiners’ opinions were based on a thorough evaluation of the Veteran and careful review of the record, and contain an explanation of the rationale for those opinions, the Board finds them to more probative than the PTSD diagnoses included in the Veteran’s VA treatment records. As explained above, unlike the VA examiners who specifically reviewed each criterion for a PTSD diagnosis under the DSM-5, it is not shown that the PTSD diagnoses included in the Veteran’s treatment records were rendered based on a similar evaluation or are otherwise supported by the findings in those treatment records. See 38 C.F.R. § 4.125. 

In conclusion, it is not shown that the Veteran has been given a proper diagnosis of PTSD based on the DSM-5 criteria. In the absence of a PTSD diagnosis, service connection for PTSD is unavailable. 38 C.F.R. § 3.304(f).

Conjunctivitis of the Left Eye and Residuals of Right Eye Trauma

“Congress specifically limits entitlement to service-connected disease or injury where such cases have resulted in a disability... in the absence of a proof of present disability there can be no claim.” Brammer v. Derwinski, 3 Vet. App. 223, 225 (1992).

STRs show that the Veteran was hit in the eye with a fist in September 1964. He reported no visual decrease at that time, but a visual loss was noted several days later, in October 1964. Examination revealed a clotted mass in the right eye. Diagnosis was traumatic hyphema of the right eye with possible subluxation of the lens. Eye drops and bed rest were prescribed. The Veteran returned to duty in November 1964. He was treated for bilateral conjunctivitis in March 1966. Subsequent STRs, including a June 1966 separation examination report, are silent for any complaints, findings, treatment, or diagnosis related to conjunctivitis or residuals of right eye trauma. Clinical evaluation of the eyes at separation was normal.

Following service, VA and private treatment records have been silent for any complaints or findings of conjunctivitis. A June 2016 VA eye conditions disability benefits questionnaire (DBQ) noted the Veteran’s history of right eye trauma and a current diagnosis of diabetes mellitus. The examination revealed, in pertinent part, bilateral cataracts with no related visual impairment, and bilateral ischemic optic neuropathy with no related visual impairment. The examination was negative for findings related to conjunctivitis. The examiner stated that there was no pathology related to residuals of right eye trauma. In the accompanying medical opinion, the June 2016 VA examiner reviewed the claims file and opined that the Veteran’s cataracts and optic neuropathy were caused by his diabetes and were less likely than not incurred in or caused by the inservice right eye trauma. It was also noted that these diagnoses were not present in the service records and were new findings.

The Board finds that service connection for left eye conjunctivitis is not warranted as there is no current disability. Likewise, service connection for residuals of right eye trauma is not warranted as there is no current disability. See 38 C.F.R. § 3.303(a); Brammer, supra. No post-service treatment records note such diagnoses and a 2016 VA examination revealed no such diagnoses. No medical evidence to the contrary has been presented. 

The Board has duly considered the benefit of the doubt doctrine; however, the preponderance of the evidence is against the Veteran’s claims seeking service connection for left eye conjunctivitis and residuals of right eye trauma. As such, that doctrine is not applicable in the instant appeal and his claims must be denied. 38 U.S.C. § 5107(b); 38 C.F.R. § 3.102; Gilbert v. Derwinski, 1 Vet. App. 49 (1990).

Bilateral Hearing Loss Disability

The Veteran contends that service connection should be established for bilateral hearing loss because, during service, he served as an ammunition specialist and was exposed to significant combat noise. He also stated that he loaded trucks in service and tested ammunition. See December 2013 claim and October 2015 hearing transcript. Service personnel records show that the Veteran’s military occupational specialty was as an ammunition stock clerk. He also had service in the Republic of Vietnam and was awarded the Sharpshooter (Rifle M-14) badge. 

The Board concludes that, while the Veteran was exposed to noise trauma in service and has a current diagnosis of bilateral hearing loss disability, see 38 C.F.R. § 3.385, the preponderance of the evidence weighs against finding that the Veteran’s current diagnosis of hearing loss began during service or is otherwise related to an in-service injury, event, or disease, to include any exposure to noise trauma therein. 38 U.S.C. §§ 1110, 1131, 5107(b); Holton v. Shinseki, 557 F.3d 1363, 1366 (Fed. Cir. 2009); 38 C.F.R. § 3.303(a), (d).

Review of the Veteran’s STRs shows that he was afforded two audiometric evaluations while on active duty. The audiometric testing showed that air conduction threshold levels were within normal limits, including at separation from service. VA treatment records show the Veteran’s sensorineural hearing loss was not diagnosed until 2013, decades after his separation from service. He has not asserted that he has suffered from hearing loss continuously since service; rather, it is his contention that his current hearing loss is related to his exposure to loud noises in service. 

An examination was conducted by VA in July 2016. At that time, a VA examiner opined that the Veteran’s bilateral hearing loss was not at least as likely as not related to an in-service injury, event, or disease, including noise trauma in service. In reaching this opinion, the examiner considered the Veteran’s claims of acoustic trauma in service and his STRs, which were noted to be negative for findings of hearing loss disability. It is significant that this is the sole medical opinion in the record. The Board may not reject medical opinions based on its own medical judgment. Obert v. Brown, 5 Vet. App. 30 (1993). The Veteran’s own statements relating his current hearing loss to his service are not competent, because he is a lay person and the issue is medically complex, as it requires the interpretation of complicated diagnostic medical testing. Jandreau v. Nicholson, 492 F.3d 1372, 1377, 1377 n.4 (Fed. Cir. 2007). For these reasons, the Board finds that a preponderance of the evidence is against the Veteran’s claim for service connection for bilateral hearing loss, and the claim must be denied. Because the preponderance of the evidence is against the claim, the benefit of the doubt doctrine is not for application. See 38 U.S.C. § 5107; 38 C.F.R. § 3.102. 

REASONS FOR REMAND

The Veteran maintains his current glaucoma, left eye proptosis/ptosis, tinea pedis and HPV are related to his military service. Specifically, he asserts his glaucoma and left eye proptosis/ptosis are related to his treatment for eye problems (trauma and/or conjunctivitis) in service. See December 2013 claim, January 2015 Notice of Disagreement and October 2015 hearing transcript. He also asserts his tinea pedis was caused by wearing combat boots in service and that he was treated for HPV in service, which persists today. See December 2013 claim and October 2015 hearing transcript. 

After a thorough review of the record, the Board finds that remand is necessary to ensure due process is followed and there is a complete record upon which to decide these claims. 38 U.S.C. § 5103; 38 C.F.R. § 3.159.

Service treatment records (STRs) show that the Veteran was seen for right eye trauma and conjunctivitis in service. Although the Veteran was afforded a VA eye examination in July 2016, he was not diagnosed with glaucoma at that time. It was not until October 2017 that a confirmed diagnosis was made. See October 2017 VA treatment record. Significantly, the Veteran’s claim was denied in the June 2018 rating decision on the basis of this medical opinion which shows no post-service diagnosis. The July 2016 VA examination also notes findings of left eye ptosis and the examiner opined that there was no pathology related to inservice right eye trauma. However, no opinion was provided as to whether this disability was incurred as a result of the Veteran’s treatment for conjunctivitis in service. An October 2017 VA treatment record notes findings of left eye proptosis but provides no nexus opinion. Therefore, these claims must be remanded for a VA medical opinion. See Barr v. Nicholson, 21 Vet. App. 303, 311-12 (2007).

The Veteran has not yet been afforded a VA examination regarding his claims for service connection for bilateral tinea pedis and service connection for HPV. Regarding tinea pedis, the Veteran served for two years in the Army. Post-service treatment records show a diagnosis of and treatment for tinea pedis, including in September 2001 and June 2012. Regarding HPV, STRs show that the Veteran was seen for a penile rash in May 1966. Post-service VA treatment records note findings of HPV, including in 2000, 2001, 2007 and 2013. The Board finds that such evidence, along with the Veteran’s contentions, is sufficient to meet the threshold requirements for affording the Veteran VA examinations. See McLendon v. Nicholson, 20 Vet. App. 79, 81-84 (2006); see also 38 U.S.C. § 5103A(d)(2); 38 C.F.R. § 3.159(c)(4). Therefore, these claims must be remanded for VA examinations and medical opinions.

The matters are REMANDED for the following actions:

1. Obtain an addendum opinion regarding the etiology of the Veteran’s glaucoma, proptosis and ptosis from the VA examiner who provided examined the Veteran in July 2016. The entire claims file must be made available to and be reviewed by the examiner. If the July 2016 VA examiner is no longer available and/or an examination is deemed necessary, it shall be provided. An explanation for all opinions expressed must be provided. The examiner must provide the following opinions: 

a. Is it at least as likely as not (50 percent or greater probability) that the Veteran’s glaucoma had onset in or is otherwise caused by, active service, to include treatment for right eye trauma and conjunctivitis noted therein?

b. Is it at least as likely as not (50 percent or greater probability) that the Veteran’s ptosis had onset in or is otherwise caused by, active service, to include treatment for right eye trauma and conjunctivitis noted therein?

c. Is it at least as likely as not (50 percent or greater probability) that the Veteran’s proptosis had onset in or is otherwise caused by, active service, to include treatment for right eye trauma and conjunctivitis noted therein?

The examiner must explain the rationale for any opinion given. If the examiner is unable to provide an opinion without resorting to speculation, he/she should so state and provide an explanation as to the reason(s) therefor. The examiner also is advised that the Veteran is competent to report his symptoms/history and that such reports must be acknowledged and considered in formulating any opinion. If his reports are discounted, the examiner should provide a reason for doing so.

2. Schedule the Veteran for a VA skin examination to determine the etiology of the Veteran’s tinea pedis and HPV. The entire claims file must be made available to and be reviewed by the examiner. An explanation for all opinions expressed must be provided. The examiner must provide the following opinions: 

a. Is it at least as likely as not (50 percent or greater probability) that the Veteran’s tinea pedis had onset in or is otherwise caused by active service, to include wearing combat boots therein?

b. Is it at least as likely as not (50 percent or greater probability) that the Veteran’s HPV had onset in or is otherwise related active service?

The examiner must explain the rationale for any opinion given. If the examiner is unable to provide an opinion without resorting to speculation, he/she should so state and provide an explanation as to the reason(s) therefor. The examiner also is advised that the Veteran is competent to report his symptoms/history and that such reports must be acknowledged and considered in formulating any opinion. If his reports are discounted, the examiner should provide a reason for doing so. 

 

A. ISHIZAWAR

Veterans Law Judge

Board of Veterans’ Appeals

ATTORNEY FOR THE BOARD K.R.Fletcher, Counsel