﻿Citation Nr: AXXXXXXXX
Decision Date: 08/31/20 Archive Date: 08/31/20

DOCKET NO. 181130-924
DATE: August 31, 2020

ORDER

The claim of entitlement to service connection for right knee degenerative joint disease (DJD), status post total knee arthroplasty, is granted.

The claim of entitlement to service connection for left knee DJD, status post total knee arthroplasty, is granted.

FINDING OF FACT

The Veteran currently has right and left knee disabilities, each diagnosed as DJD, status post total arthroplasty; he has competently and credibly asserted participating in strenuous activities during his nearly 20-years of active service; and there is competent, probative evidence indicating that his current right and left knee disabilities are as likely as not etiologically-related to such activities during such service. 

CONCLUSIONS OF LAW

1. Resolving all reasonable doubt in the Veteran’s favor, the criteria for service connection for right knee DJD, status post total knee arthroplasty, are met. 38 U.S.C. §§ 1110, 1112, 1113, 1131, 5107; 38 C.F.R. §§ 3.102, 3.303, 3.307, 3.309.

2. Resolving all reasonable doubt in the Veteran’s favor, the criteria for service connection for left knee DJD, status post total knee arthroplasty, are met. 38 U.S.C. §§ 1110, 1112, 1113, 1131, 5107; 38 C.F.R. §§ 3.102, 3.303, 3.307, 3.309.

REASONS AND BASES FOR FINDING AND CONCLUSIONS

The Veteran served on active duty in the United States Marine Corps from January 1967 to October 1988. 

This appeal to the Board of Veterans Appeals (Board) initially arose from January and September 2017 decisions of the Department of Veterans (VA) Regional Office (RO) which continued the denial of a previously denied service connection claim for right knee disability, and denied service connection for left knee disability. The Veteran filed a notice of disagreement (NOD) in January 2018 and the RO issued a statement of the case (SOC) in March 2018.

Notably, on August 23, 2017, the President signed into law the Veterans Appeals Improvement and Modernization Act, Pub. L. No. 115-55 (to be codified as amended in scattered sections of 38 U.S.C.), 131 Stat. 1105 (2017), also known as the Appeals Modernization Act (AMA). This law creates a new framework for veterans dissatisfied with VA’s decision on their claim to seek review. In the instant case, the Veteran chose to participate in VA’s test program, the Rapid Appeals Modernization Program (RAMP). 

In his June 2018 RAMP election form, the Veteran requested higher level review. Thereafter, in September 2018, the RO issued a RAMP rating decision in which it considered the evidence of record as of the date VA received the RAMP election form. Notably, in that decision, the RO determined that new and relevant evidence had been received to warrant re-adjudicating the previously denied claim for service connection for right knee disability, but denied service connection for right and left knee disabilities, on the merits. In October 2018, the Veteran submitted a statement indicating that he was seeking further review by appealing to the Board, and requested a Board hearing. 

In November 2019, the Veteran testified during a Board videoconference hearing before the undersigned Veterans Law Judge; a transcript of that hearing is of record. In conjunction with the hearing, the Veteran submitted a statement in support of his claim. He also waived the 90-day submission period for additional evidence. 

Also, this appeal has been advanced on the Board's docket pursuant to 38 U.S.C. § 7107(a)(2) and 38 C.F.R. § 20.900(c). 

At the outset, it is noted that the Board is bound by the favorable finding of the RO that new and relevant evidence has been received to reopen the previously denied service connection claim for right knee disability. See 38 C.F.R. § 3.104. As such, the Board need not adjudicate the issue again and may proceed to the merits of both service connection claims on appeal.

Service Connection

The Veteran contends that he has right and left knee disabilities related to service. Specifically, he asserts that his long-term G-force exposure as a pilot, as well as the impact of running and hiking to maintain physical standards, caused his bilateral knee DJD. 

Service connection may be granted for disability resulting from disease or injury incurred in or aggravated by service. See 38 U.S.C. §§ 1110, 1131; 38 C.F.R. § 3.303. Service connection may be granted for any disease diagnosed after discharge from service when all the evidence, including that pertinent to service, establishes that the disease was incurred in or aggravated by service. See 38 C.F.R. § 3.303(d).

Generally, to establish service connection, there must be competent evidence of (1) a current disability; (2) in-service incurrence or aggravation of a disease or injury; and (3) a nexus between the claimed in-service disease or injury and the current disability. See Hickson v. West, 12 Vet. App. 247, 253 (1999); see also Jandreau v. Nicholson, 492 F.3d 1372 (Fed. Cir. 2007). The determination as to whether each element of a claim is met is based on an analysis of all relevant evidence of record, and evaluation of its competency, credibility, and probative value. See Buchanan v. Nicholson, 451 F.3d 1331 (Fed. Cir. 2006); Baldwin v. West, 13 Vet. App. 1, 8 (1999).

Certain chronic diseases, such as arthritis, shall be presumed to have been incurred in service if manifested to a compensable degree within a prescribed period post-service (one year for arthritis), even though there is no evidence of such disease during the period of service. This presumption is rebuttable by affirmative evidence to the contrary. 38 U.S.C. §§ 1101, 1112, 1113; 38 C.F.R. §§ 3.307, 3.309. 

With chronic disease shown as such in service (or within the presumptive period under 38 C.F.R. § 3.307) so as to permit a finding of service connection, subsequent manifestations of the same chronic disease at any later date, however remote, are service-connected, unless clearly attributed to incurrent causes. Continuity of symptomatology is required only where the condition noted during service (or in the presumption period) is questioned. When the fact of chronicity is service is not adequately supported, then the showing of continuity after discharge is required to support the claim. 38 C.F.R. § 3.303(b). 

The United States Court of Appeals for the Federal Circuit has clarified that the provisions of 38 C.F.R. § 3.303(b) pertaining to the award of service connection of the basis of continuity of symptomatology (in lieu of a medical nexus opinion) apply to chronic diseases as defined in 38 C.F.R. § 3.309(a). See Walker v. Shinseki, 708 F.3d 1331 (Fed. Cir. 2013). As noted, arthritis is among the diseases listed in § 3.309(a). 

In adjudicating a claim for VA benefits, VA is responsible for determining whether the evidence supports the claim or is in relative equipoise, with the Veteran prevailing in either event, or whether a preponderance of the evidence is against the claim, in which case the claim is denied. 38 U.S.C. § 5107(b); 38 C.F.R. § 3.102; Gilbert v. Derwinski, 1 Vet. App. 49, 53-56 (1990). 

In this case, the Veteran’s DD-214 indicates that he served as a bombardier/navigator and received the Flight Air Medal. His service treatment records (STRs), including his separation examination report, are unremarkable for any reference to knee injury, or any documented complaints, findings or diagnosis pertaining to either knee. 

Nonetheless, the Veteran has asserted that during his last 13 years in the Marine Corps, he ran between 900 and 1100 miles/year to maintain published physical standards. The only time he did not run consistently was when he flew in an operation combat squadron. In flying tactical jet aircrafts, high G-force exposure was a repetitive, integral part his mission. He also served for 8 years in tactical squadrons, flying for approximately 330 combat hours in tactical jet aircraft while logging 231 combat missions. 

Post service, the Veteran filed a claim for a right knee condition in December 1988, three months after separation from active service. VA treatment records indicate that the Veteran underwent a left knee arthroscopic meniscectomy in 2005. Private treatment X-rays indicate that the Veteran was diagnosed with DJD of both knees in 2015. Following a right knee total arthroplasty in October 2015, the Veteran underwent a left knee total arthroplasty in February 2016.

In a July 2017 statement, the Veteran’s private orthopedist, Dr. Bradley, noted his review of the Veteran’s military medical records and that he had treated him for several years, Dr. Bradly stated that the Veteran’s diagnoses are consistent with long-term effects of knee deterioration that consistently is contributed to by a career in the Marine Corps. He also stated that the physical requirements of the Veteran’s profession, such as a daily running routine or prolonged hikes with packs, are factors directly associated with his condition that resulted in his knee replacements. Additionally, Dr. Bradly stated that the Veteran’s duties as an aviator and exposure to extreme “G” forces only contributed further to the eventual problems in his knees. Further, he noted that the equipment to reduce the impact “G” forces did little, if anything, to support the knees, neck and back. Moreover, like many orthopedic problems of physically demanding professions, the effects do not manifest themselves immediately but the long-term effects of those stresses on the body’s structure are reflected in later years, as it did with the Veteran. 

On VA examination in September 2017, the examiner opined that the Veteran’s bilateral knee disabilities were less likely than not incurred in or caused by service. As rationale, the examiner stated that the Veteran’s claims file lacks objective medical evidence to confirm treatment or a diagnosis for the knees during military service. As such, a nexus was not established. 

Later, in a January 2018 statement, the Veteran questioned the adequacy of the September 2017 opinion. Specifically, he pointed out that the examiner did not discuss his private medical opinion and improperly stated that his diagnoses did not impact his ability to perform occupational tasks. Moreover, he compared the experience of the nurse practitioner examiner and the private orthopedic surgeon. 

In a February 2018 VA addendum opinion, a VA clinician opined that the Veteran’s bilateral knee disabilities were less likely than not incurred in or caused by the rigors of training and G-force during service. As rationale, the clinician stated the Veteran’s bilateral DJD of the knees was diagnosed in the late 60’s, which corresponds to normal aging in an obese patient. The clinician also disagreed with the specialist’s opinion, noting that what was described was possible but not likely. Additionally, the clinician stated that the rigors of training and G forces produces less serious effects of musculoskeletal pain, and is usually confined to the back and neck, citing to an article published in golflightmedicine.com. Also, the clinician noted that the Veteran weighed 197 pounds at separation and used to jog during his initial treatment for and diagnosis of DJD of the bilateral knees. Moreover, while jogging itself does not cause DJD, the clinician noted that when a patient is significantly overweight and already has early DJD, jogging can accelerate the DJD, which is likely what happened with the Veteran. 

Shortly thereafter, in a June 2018 statement, the Veteran questioned the accuracy of VA opinion provider’s characterization of the evidence. In this regard, the Veteran emphasized that, during service, his weight was within healthy limits due to regularly jogging and that, while he was overweight after service, he was not obese. He further attributed this weight gain to his DJD, which affected his ability to run. Also, as for the article cited by the 2018 examiner, the Veteran pointed out that the article only addresses the immediate effects of G forces rather than the long-term effects, as discussed by Dr. Bradley.

During the November 2019 Board hearing, and in an accompanying statement, the Veteran pointed out that Dr. Bradley’s practices are in areas close to two large Marine Corps bases, and therefore, he is very familiar with the orthopedic problems of Marines. Moreover, he reiterated the perceived inadequacies of the VA opinions and the probative value of the Dr. Bradley’s opinion. 

Considering the pertinent evidence in light of the governing legal authority, and affording the Veteran the benefit of the doubt on certain elements of the claim, the Board finds that service connection for right and left knee disabilities is warranted. 

First addressing the current disability requirement for each claim, the record clearly reflects the Veteran’s clinical diagnoses of DJD and status post total knee arthroplasty.

As for the in-service injury or disease requirement, as noted above, the Board acknowledges that the Veteran’s STRS reference no specific knee injury, nor do they document any complaints, finding or diagnosis pertinent to either knee. However, the Veteran’s DD-214 reflects over twenty years of active service in the Marines, with most of that time spent as a bombardier/navigator. The Veteran stated that he hiked and ran hundreds of miles to maintain the published physical standards. He also reported repeated G-force exposure while flying. The Board notes that the Veteran is competent to report on matters observed or within his personal knowledge, to include his own history. See 28 C.F.R. § 3.159(a)(2); Jandreau, 492 F.3d at 1376-77. See also Charles v. Principi, 16 Vet. App. 370 (2002); Layno v. Brown, 6 Vet. App. 465, 270 (1994). As there is no evidence to contradict his assertions in this regard, the Board finds no reason to question the veracity of such assertions, and accepts them as credible evidence of the strenuous activities reported by the Veteran as occurring throughout his military career. 

Thus, the remaining question is whether the Veteran’s right and left knee disabilities are medically related to service. As noted, the claims file includes conflicting medical opinions on this point. 

In weighing medical opinions, the Board must assess the probative value of the opinion evidence, and in doing so, may favor one medical opinion over the other. See Evans v. West, 12. Vet. App. 22, 30 (1998) (citing Owens v. Brown, 7 Vet. App. 429, 433 (1995)). The Board must account for the evidence it finds persuasive or unpersuasive and provide reasons for rejecting material evidence favorable to the claim. See Gabrielson v. Brown. 7 Vet. App. 36, 39-40 (1994). 

The medical opinions identified above were rendered by competent medical professionals. The Board finds, however, that the September 2017 VA examiner’s opinion is not particularly probative, as it conclusory and she did not provide a rationale for the negative opinion, other than stating that there was no objective evidence of an in-service diagnosis. See Stefl v. Nicholson, 21 Vet. App. 120, 125 (2007) (holding a mere conclusory opinion is insufficient to allow the Board to make an informed decision as to the weight to assign to the opinion against contrary opinions.); Moreover, the September 2017 opinion provider did not explicitly address the Veteran’s lay assertions as to the physical demands of keeping up with in-service physical standards, his filing of a claim for a right knee condition only three months after separation from active service, and the positive July 2017 private opinion. 

As for the negative February 2018 VA addendum opinion, the Board also finds that the opinion provider did not clearly consider the lay assertions by the Veteran regarding the routine running and hiking he did during service, which he contends led to the development of DJD of both knees. Also, it is not clear whether the VA examiner was referencing long-term or short-term effects of G-force exposure in the opinion. 

By contrast, Dr. Bradley’s July 2017 opinion seems to reflect full consideration of the pertinent evidence then of record, to include the Veteran’s STRs, personnel records, military records, and lay assertions. To the extent that the private physician relied on the Veteran’s lay reports, the Board emphasizes that VA is not free to ignore a medical opinion or pertinent medical findings, or to reject such a medical opinion based on its own medical judgement (see, e.g., Obert v. Brown, 5 Vet. App. 30 (1993) and Colvin v. Derwinski, 1 Vet. App. 171 (1991)), even if the opinion is based, in part, on the Veteran’s own lay assertions. Here, the Board has determined that the Veteran’s lay reports as to his in-service activities as credible, and Dr. Brandley has noted that the reported running, hiking, and G-force exposure, in the long-term, can develop into knee DJD. As such, the Board finds no adequate basis to reject this opinion, which is favorable to the Veteran. See Madden v. Gober, 124 F.3d 1477, 1481 (Fed. Cir. 1997). 

Considering the collective medical opinions of record discussed above, the Board finds that, at the very least, the medical opinion evidence both for and against each claim on the medical nexus question is in relative equipoise (relatively evenly balanced). As such, the benefit-of-the-doubt doctrine is for application. 

When, after careful consideration of all procurable and assembled data, a reasonable doubt arises regarding service origin, the degree of disability, or any other point, such doubt will be resolved in favor of the claimant. 38 C.F.R. § 3.102. See also 38 U.S.C. § 5107(b); Gilbert, 1 Vet. App. at 53-56. 

Given the totality of the evidence discussed above, the Board finds that competent medical and credible lay evidence collectively indicates that there is as likely as not a relationship between the Veteran’s current right and left knee disabilities and in-service strenuous activities, to include regular jogging, hiking, and G-force exposure therein. Accordingly, with resolution of all reasonable doubt on certain elements of the claim in the Veteran’s favor the Board concludes that the criteria for service connection for right and left knee disabilities, each diagnosed as DJD, status post total knee arthroplasty, are met. 

 

 

JACQUELINE E. MONROE

Veterans Law Judge

Board of Veterans’ Appeals

Attorney for the Board B. Spann, Associate Counsel

The Board’s decision in this case is binding only with respect to the instant matter decided. This decision is not precedential and does not establish VA policies or interpretations of general applicability. 38 C.F.R. § 20.1303.