Citation Nr: AXXXXXXXX
Decision Date: 07/30/21 Archive Date: 07/30/21

DOCKET NO. 190717-24078
DATE: July 30, 2021

ORDER

Entitlement to service connection for tinnitus is denied.

Entitlement to service connection for diabetes mellitus is denied.

Entitlement to service connection for residuals of head trauma is denied.

Entitlement to service connection for chronic pain syndrome is denied.

Entitlement to an evaluation in excess of 30 percent for service-connected posttraumatic stress disorder (PTSD) is denied.

FINDINGS OF FACT

1. The Veteran's tinnitus was not shown as chronic in service and did not manifest to a compensable degree within the applicable presumptive period; continuity of tinnitus symptoms is not established; and the disability is not otherwise etiologically related to an in-service injury or disease.

2. The Veteran's diabetes mellitus was not shown as chronic in service and did not manifest to a compensable degree within the applicable presumptive period; continuity of diabetes mellitus symptoms is not established; and the disability is not otherwise etiologically related to an in-service injury or disease, to include fatigue and insomnia.

3. The preponderance of the evidence of record is against finding that the Veteran has had any residuals of a head trauma at any time during or approximate to the pendency of the claim.

4. The preponderance of the evidence of record is against finding that the Veteran has had chronic pain syndrome at any time during or approximate to the pendency of the claim.

5. The Veteran's PTSD is manifested by depressed mood, anxiety, chronic sleep impairment, and occupational impairment with occasional decrease in work efficiency and intermittent periods of inability to perform occupational tasks but not occupational and social impairment with reduced reliability and productivity.

CONCLUSIONS OF LAW

1. The criteria for entitlement to service connection for tinnitus are not met. 38 U.S.C. §§ 1110, 1112, 1113, 1131, 5107; 38 C.F.R. §§ 3.102, 3.303, 3.307, 3.309.

2. The criteria for entitlement to service connection for diabetes mellitus are not met. 38 U.S.C. §§ 1110, 1112, 1113, 1131, 5107; 38 C.F.R. §§ 3.102, 3.303, 3.307, 3.309.

3. The criteria for service connection for residuals of head trauma are not met. 38 U.S.C. §§ 1110, 1112, 1113, 1131, 1137, 5107; 38 C.F.R. §§ 3.102, 3.303.

4. The criteria for service connection for chronic pain syndrome are not met. 38 U.S.C. §§ 1110, 1112, 1113, 1131, 1137, 5107; 38 C.F.R. §§ 3.102, 3.303.

5. The criteria for a disability rating in excess of 30 percent for PTSD have not been met. 38 U.S.C. §§ 1155, 5107; 38 C.F.R. §§ 4.1, 4.3, 4.7, 4.126, 4.130, Diagnostic Code 9411.

REASONS AND BASES FOR FINDINGS AND CONCLUSIONS

The Veteran served on active duty from March 1989 to March 2009. 

A May 2019 rating decision denied granted a 30 percent rating for PTSD from November 27, 2018, the date of receipt of the Veteran's claim for increase.

In May 2019, the Veteran submitted a VA Form 20-0995, Decision Review Request: Supplemental Claim, and requested readjudication of chronic pain syndrome, tinnitus, diabetes, and head trauma with loss of consciousness most recently addressed in a March 2019 rating decision. In June 2019, the agency of original jurisdiction (AOJ) issued the supplemental claim decision on appeal, which implicitly found that new and relevant evidence had been received and denied the claims based on the evidence of record at the time of that decision. 

In the July 2019, the Board of Veterans' Appeals (Board) received the Veteran's VA Form 10182, Decision Review Request: Board Appeal, wherein he elected the Hearing docket. The Veteran testified before the undersigned Veterans Law Judge in March 2021. A hearing transcript is associated with the claims file.

As to the PTSD claim, the Board may only consider the evidence of record at the time of the May 2019 decision on appeal and any evidence submitted by the Veteran or his representative at the hearing or within 90 days following the hearing. 38 C.F.R. § 20.302(a). As to the other claims, the Board may only consider the evidence of record at the time of the June 2019 decision on appeal and any evidence submitted by the Veteran or his representative at the hearing or within 90 days following the hearing. 38 C.F.R. § 20.302(a).

Service connection

Service connection may be granted for a disability resulting from disease or injury incurred in or aggravated by active service. 38 U.S.C. §§ 1110, 1131; 38 C.F.R. § 3.303(a). To establish a right to compensation for a present disability, a Veteran must show: (1) the existence of a present disability; (2) in-service incurrence or aggravation of a disease or injury; and (3) a causal relationship between the present disability and the disease or injury incurred or aggravated during service - the so-called "nexus" requirement. Holton v. Shinseki, 557 F.3d 1362, 1366 (Fed. Cir. 2009) (quoting Shedden v. Principi, 381 F.3d 1163, 1167 (Fed. Cir. 2004)). Service connection may be granted for any disease initially diagnosed after discharge when all of the evidence, including that pertinent to service, establishes that the disease was incurred in service. 38 C.F.R. § 3.303(d).

In addition, service connection for certain chronic diseases may be established on a presumptive basis by showing that the condition manifested to a degree of 10 percent or more within one year from the date of separation from service. 38 U.S.C. §§ 1101, 1112, 1113, 1131, 1137 (2012); 38 C.F.R. §§ 3.307, 3.309(a) (2017); Fountain v. McDonald, 27 Vet. App. 258, 271-72 (2015). Although the disease need not be diagnosed within the presumptive period, it must be shown, by acceptable lay or medical evidence, that there were characteristic manifestations of the disease to the required degree during that time. 38 U.S.C. §§ 1101, 1112, 1113; 38 C.F.R. §§ 3.307, 3.309(a).

Additionally, for certain chronic diseases with potential onset during service, there is required a combination of manifestations sufficient to identify the disease entity, and sufficient observation to establish chronicity at the time. If chronicity in service is not established, a showing of continuity of symptoms after discharge may support the claim. 38 C.F.R. §§ 3.303(b), 3.309 (2017); Walker v. Shinseki, 708 F.3d 1331 (Fed. Cir. 2013).

1. Entitlement to service connection for tinnitus is denied.

The Veteran contends that his tinnitus began during service. See Hearing Transcript (March 2021). 

The Board concludes that tinnitus was not manifested in service or within the initial post separation year; that continuity of symptomatology is not established; and that tinnitus was not caused by an in-service injury, event or disease. 38 U.S.C. §§ 1110, 5107(b); 38 C.F.R. §§ 3.102, 3.303, 3.307, 3.309.

First, the Board finds that there is a current disability. See Holton, 557 F.3d at 1366; 38 C.F.R. § 3.303(d). The Veteran has reported the presence of tinnitus, which is capable of lay observation. See Charles v. Principi, 16 Vet. App. 370, 374 (2002) (noting that tinnitus is subjective and the kind of condition which lay evidence is competent to describe). The Board finds no reason to doubt the Veteran's statement in this regarding and thus finds the lay statement credible. See Caluza v. Brown, 7 Vet. App. 498, 511 (1995) (noting that the credibility of a witness may be impeached by a showing of interest, bias, inconsistent statements, consistency with other evidence), aff'd, 78 F.3d 604 (Fed. Cir. 1996).

Second, the Board finds that the evidence supports a finding of in-service noise exposure, but not in-service symptoms or diagnoses of tinnitus. See Holton, 557 F.3d at 1366; 38 C.F.R. § 3.303(d). The evidence shows noise exposure during service - the Veteran's service personnel records show noise exposure with protective equipment during the Veteran's 20 years of active duty, to include as due to his various military occupational specialties. See VA 21-526 Veterans Application for Compensation or Pension (April 2009). 

Third, the Board finds, the competent, credible evidence has not been presented showing that tinnitus had is onset in service, within one year after service discharge, or that it is otherwise etiologically related to in-service injury or disease, to include noise exposure.

In this regard, hat the evidence does not support a finding that tinnitus had onset during active duty. Service treatment records (STRs) show no complaints or findings consistent with tinnitus, and there is no competent, credible evidence of tinnitus within one year after service discharge. In March 2021, the Veteran testified that his tinnitus began about 10 years into his service and has continued since that time. See Hearing Transcript (March 2021). Although he is competent to report such symptoms, the Board finds the statements are not significantly credible because they are in conflict with other evidence of record. See Charles, 16 Vet. App. at 374; Caluza, 7 Vet. App. at 511. For instance, the Veteran's STRs are silent for complaints of tinnitus and he denied hearing loss, but not specifically tinnitus, at various points. See STR - Medical (December 2008). Furthermore, in a July 2009 VA audiology examination, conducted within a few months of service discharge, the Veteran denied a current complaint of tinnitus. See C&P Exam (July 2009). This, in particular, weighs against a finding of tinnitus during service or shortly thereafter and weighs against the credibility of the Veteran's lay statements. Accordingly, the evidence establishes noise exposure but not symptoms of tinnitus during service. 

Further, the Board finds that the evidence of record does not support a finding that tinnitus is related to active service. See Holton, 557 F.3d at 1366; 38 C.F.R. § 3.303(d). Initially, because tinnitus symptoms or characteristic manifestations thereof were not present during service or within one year of discharge, service connection as a chronic disability is not warranted. See 38 C.F.R. §§ 3.307, 3.309(a). Additionally, the evidence does not demonstrate continuity of tinnitus since service, as noted by the denial of tinnitus at the July 2009 VA audiology examination. See C&P Exam (July 2009). Furthermore, the evidence of record does not show that tinnitus is otherwise due to in-service noise exposure. The first evidence of tinnitus was in the Veteran's 2018 claim, which is approximately nine years after service discharge. This gap in time weighs against service connection. See Mense v. Derwinski, 1 Vet. App. 354, 356 (1991). To the extent that the Veteran asserts his tinnitus is due to in-service noise exposure (as opposed to having onset during service), the statements are not competent. Lay witnesses may, in some circumstances, opine on questions of diagnosis and etiology. Davidson v. Shinseki, 581 F.3d 1313, 1316 (Fed. Cir. 2009); Kahana v. Shinseki, 24 Vet. App. 428, 435 (2011). But here, the etiology of tinnitus, which had onset after active service, is not susceptible to lay observation and requires medical knowledge as to an internal audiological process and its likely causes, which the Veteran is not shown to possess. See Jandreau v. Nicholson, 492 F.3d. 1372 (2007); Buchanan v. Nicholson, 451 F. 3d 1331 (Fed. Cir. 2006). Therefore, the Veteran's statement in this regard has no probative value. Thus, the evidence does not demonstrate that tinnitus began during service, was present within one year of service, or is otherwise due to active service. 

On balance, the weight of the evidence is against the claim. Accordingly, the claim is denied. There is no doubt to resolve. 38 U.S.C. § 5107(b). 

2. Entitlement to service connection for diabetes mellitus is denied.

The Veteran contends that symptoms of diabetes mellitus, to include insomnia and fatigue, began during service and that he was diagnosed within a year or two of service discharge. See Hearing Transcript (March 2021). Alternatively, the Veteran asserts that his obesity began during active duty and that it led to his diabetes mellitus. See Hearing Transcript (March 2021).

The Board finds diabetes mellitus was not manifested in service or within the initial post separation year; that continuity of symptomatology is not established; and that diabetes mellitus was not caused by an in-service injury, event or disease. 38 U.S.C. §§ 1110, 5107(b); 38 C.F.R. §§ 3.102, 3.303, 3.307, 3.309.

First, the Board finds that there is a current disability. See Holton, 557 F.3d at 1366; 38 C.F.R. § 3.303(d). Private medical records dated in 2014 indicate diagnostic testing showed diabetes mellitus, type II. See Medical Treatment Record Non-Government Facility (May 2019). 

Second, the Board finds that there was not a diagnosis during service although obesity and sleeping problems were shown during service. See Holton, 557 F.3d at 1366; 38 C.F.R. § 3.303(d). The Veteran's STRs are silent for any diabetes mellitus. There were notations that the Veteran was overweight and was placed on phentermine, to assist in his attempts to lose weight. See STR Medical (December 2008). Obesity was diagnosed as early as 2002. See STR Medical (December 2008). In his 2008 service discharge report of medical history, the Veteran reported trouble sleeping. See STR Medical (April 2003). Examiner's notes associated with that report indicated that primary snoring and insufficient sleep syndrome were diagnosed, insomnia was evaluated in 2007, and sleep apnea was eventually diagnosed in 2008. See STR Medical (April 2003). The Veteran's 2008 service discharge report of medical examination showed a normal fasting glucose. See STR Medical (April 2003). A VA examination conducted just prior to service discharge included a metabolic panel that showed a non-significant glucose test. See C&P Exam (February 2009). The STRs thus do not show a diagnosis or a "combination of manifestations sufficient to identify the disease entity, and sufficient observation to establish chronicity at the time." 38 C.F.R. § 3.303(b).

Third, the Board finds that the evidence of record does not support a finding that diabetes mellitus is otherwise related to active service, to include any in-service obesity, insomnia, and fatigue. See Holton, 557 F.3d at 1366; 38 C.F.R. § 3.303(d). As indicated above, diabetes mellitus was not diagnosed during service or within one year from the date of separation from service. 38 C.F.R. §§ 3.307, 3.309(a). Private treatment records dated beginning in at least 2011 are silent for any diabetes mellitus. See Medical Treatment Record Government Facility (May 2021). 

Furthermore, the evidence does not demonstrate that diabetes mellitus is otherwise related to active service. There is no probative etiological opinion of record. In March 2021, a private clinician noted review of the Veteran's STRs. The clinician opined that insomnia and fatigue during active duty could have been from anxiety, early onset diabetes, sleep apnea or other issues. The clinician also opined that the Veteran was obese during service and was placed on phentermine to encourage weight loss and noted that obesity is a risk factor for type II diabetes. The Board does not find either of these opinions probative, as both are speculative. See Obert v. Brown, 5 Vet. App. 30 (1993) (noting that a medical opinion expressed in terms of "may" also implies "may or may not" and is too speculative to establish medical nexus). Furthermore, a VA examiner found that in-service fatigue and difficulty staying awake during the daytime were likely due to sleep apnea and insufficient sleep syndrome; sleep apnea is a service-connected disability. See C&P Exam (February 2009); Rating Decision (April 2009). There is no other etiological opinion of record linking diabetes mellitus to active service, to include obesity, fatigue, and/or sleep difficulty. The Veteran asserts that his diabetes mellitus is related to active duty. Although lay witnesses may opine on some questions of etiology, the etiology of an internal metabolic disease is not capable of lay observation. See Davidson, 581 F.3d at 1316; Jandreau, 492 F.3d. 1372; Buchanan, 451 F. 3d 1331; Kahana, 24 Vet. App. at 435. Therefore, the Veteran's belief, in the absence of any other competent, credible evidence has no probative value. Thus, the evidence does not demonstrate that diabetes mellitus did not begin during service, was present within one year of service, or is otherwise due to active service. 

On balance, the weight of the evidence is against the claim. 

Accordingly, the claim is denied. There is no doubt to resolve. 38 U.S.C. § 5107(b).

3. Entitlement to service connection for residuals of head trauma is denied.

The Veteran alleges that he hit his head and lost consciousness several times during active service. See Hearing Transcript (March 2021). He alleges these injuries occurred on several ships. See VA 21-526EZ, Fully Developed Claim (November 2018).

The Board concludes that the preponderance of the evidence is against the claim as a current disability is not shown at any time during the pendency of the claim or recent to the filing of the claim. Romanowsky v. Shinseki, 26 Vet. App. 289, 294 (2013); McClain v. Nicholson, 21 Vet. App. 319, 321 (2007); 38 C.F.R. §§ 3.102, 3.303.

The Board finds that there is no current disability or symptoms causing functional impairment of earning capacity. 38 C.F.R. § 3.303; Saunders v. Wilkie, 886 F.3d 1356 (Fed. Cir. 2018). Although the Veteran's STRs are silent for any reports of head injuries, the Board finds that the Veteran did experience a head injury during service. The Veteran has reported various in-service head injuries. See Hearing Transcript (March 2021). Additionally, a service-member who served with the Veteran in 1999 stated that he witnessed the Veteran experience loss of consciousness after he hit his head. See Buddy/Lay Statement (May 2019). The Board finds these statements competent, because a hit to the head and loss of consciousness are capable of lay observation. See Washington v. Nicholson, 19 Vet. App. 362, 368 (2005) (noting that a lay witness is competent to report to factual matters of which he or she has first-hand knowledge). Furthermore, the statements are credible, as they corroborate each other and are consistent with the circumstances of the Veteran's service, to include lengthy sea service. See DD 214 Certified Original (April 2009); 38 U.S.C. § 1154(a); Caluza, 7 Vet. App. at 511.

The lay and medical evidence of record, however, does not demonstrate any evidence of residuals of a head injury. It is noted that pain alone, even without an underlying diagnosis, can still constitute a current disability, for VA compensation purposes, if it reaches the level of a functional impairment of earning capacity. Saunders v. Wilkie, 886 F.3d 1356 (Fed. Cir. 2018). Private medical records are silent for any such residuals. Although headaches are of record, the Veteran is already service-connected for that disorder. Additionally, the Veteran did not indicate any symptoms that he perceived to be residuals of in-service head injuries. See Hearing Transcript (March 2021). 

On balance, the weight of the evidence is against the claim. Accordingly, the claim is denied. There is no doubt to resolve. 38 U.S.C. § 5107 (b). 

4. Entitlement to service connection for chronic pain syndrome is denied.

The Veteran alleges that his chronic pain disorder as related to his back began during service and has existed since that time. See Hearing Transcript (March 2021). 

The Board concludes that the preponderance of the evidence is against finding that the Veteran has or had the claimed disability any time during the pendency of the claim or recent to the filing of the claim. Romanowsky v. Shinseki, 26 Vet. App. 289, 294 (2013); McClain v. Nicholson, 21 Vet. App. 319, 321 (2007); 38 C.F.R. §§ 3.102, 3.303,

The Board initially notes that the issue on appeal is characterized as chronic pain syndrome and not as service connection for a low back disability. Service connection for a low back disability was denied in 2009. See Rating Decision (April 2009). In November 2018, the Veteran filed a claim for his back and for chronic pain syndrome, due to his service-connected knees. See VA 21-526EZ, Fully Developed Claim (November 2018). The AOJ denied increased evaluations for the knees and service connection for a chronic pain syndrome and deferred the issue of service connection for a back disorder. See Rating Decision (March 2019). Service connection for a back disorder was then denied in May 2019. See Rating Decision (May 2019). The Veteran did not appeal the denial of service connection for chronic pain syndrome based on the knee disabilities or the denial of service connection for back disability. Rather, in June 2019, the Veteran filed a claim for chronic pain syndrome. See VA Form 20-0995 Supplemental Claim Application (May 2019). At the Board hearing, the Veteran stated that he was alleging chronic pain syndrome due to his low back disorder. See Hearing Transcript (March 2021). 

Although a Veteran may identify a particular disorder when he or she files a claim, the Board acknowledges the scope of the claim cannot be limited only to the disorder stated, but must be considered a claim for any disorder that may reasonably be encompassed by several factors including the description of the claim, the symptoms the claimant describes, and the information the claimant submits or that VA obtains in support of the claim. Clemons v. Shinseki, 23 Vet. App. 1, 5 (2009). "[T]he claimant's intent in filing a claim is paramount to construing its breadth." Clemons v. Shinseki, 23 Vet. App. 1, 5 (2009). Where there is a prior rating decision, VA must determine whether one claim is the same as another that was previously denied by looking to whether there are significant elements that distinguish them, Ephraim v. Brown, 82 F.3d 399 (Fed. Cir. 1996), or whether they arise from a common factual basis, Boggs v. Peake, 520 F.3d 1330 (Fed. Cir. 2008). Here, it is clear that the Veteran understood the difference between alleging claims for a low back disability and for a chronic pain syndrome, as indicated by filing separate claims for various orthopedic disabilities and claims for chronic pain syndrome. The Board finds that the issue on appeal is thus entitlement to service connection for chronic pain syndrome.

Next, the Board notes that chronic pain syndrome is not considered herein as based on the bilateral knees. Here, service connection is in effect for right and left knee disabilities, a right wrist disability, a left wrist disability, and a right hip disability. See Rating Decision (April 2009); Rating Decision (April 2010). Thus, service connection for chronic pain syndrome connected to any of these disabilities is not available as the symptoms of those, including pain, are already compensated. See 38 C.F.R. § 4.14; Esteban v. Brown, 6 Vet. App. 259 (1994) (noting that a veteran may not be compensated twice for the same symptoms). 

Considering chronic pain syndrome based on a back disability, the Board finds that there is no current disability of chronic pain syndrome. See Holton, 557 F.3d at 1366; 38 C.F.R. § 3.303(d). But the evidence of record does not demonstrate a diagnosis of chronic pain syndrome. A January 2019 VA medical opinion was obtained. The examiner reviewed the claims folder, including relevant medical records. The examiner concluded that there was no diagnosis of chronic pain syndrome based on the definition provided by the Institute for Chronic Pain, noting that the only diagnosis was bilateral knee osteoarthritis which causes pain. See C&P Exam (January 2019). 

Additionally, in May 2019, a private practitioner noted that the Veteran had chronic pain of his low back and bilateral knees secondary to osteoarthritis of those joints. He had been seen for pain management since 2011. See Medical Treatment Record - Non-Government Facility (May 2019). In April 2021, a private practitioner noted that the Veteran had been seen in pain management since 2011 for knee and back pain. The practitioner noted that a 2011 treatment note indicated a fall during service that had caused back pain. On this basis, the practitioner opined that the Veteran's back pain was service-connected. These opinions do not indicate a diagnosis of chronic pain syndrome; rather they indicate that a back disorder may be related to active duty. But this is not the issue on appeal. 

On balance, the weight of the evidence is against the claim. 

Accordingly, the claim is denied. There is no doubt to resolve. 38 U.S.C. § 5107(b). 

Evaluations

Disability evaluations are determined by the application of the VA Schedule for Rating Disabilities (Rating Schedule). 38 C.F.R. Part 4. The percentage ratings contained in the Rating Schedule represent, as far as can be practicably determined, the average impairment in earning capacity resulting from diseases and injuries incurred or aggravated during military service and their residual conditions in civil occupations. 38 U.S.C. § 1155; 38 C.F.R. § 4.1. Any reasonable doubt regarding the degree of disability will be resolved in favor of the claimant. 38 C.F.R. § 4.3. If two evaluations are potentially applicable, the higher evaluation will be assigned if the disability picture more nearly approximates the criteria required for that evaluation; otherwise, the lower rating will be assigned. 38 C.F.R. § 4.7. A disability may require re-evaluation in accordance with changes in a veteran's condition. It is thus essential, in determining the level of current impairment, that the disability be considered in the context of the entire recorded history. 38 C.F.R. § 4.1.

5. Entitlement to an evaluation in excess of 30 percent for service-connected PTSD is denied.

The Veteran asserts that his PTSD symptoms are more accurately reflected by a 50 or 70 percent rating. See Hearing Transcript (March 2021).

During the appeal period, the Board concludes that the Veteran's symptoms did not cause the level of impairment required for a disability rating of 50 percent or higher. The Veteran's symptoms more closely approximated the symptoms associated with a 30 percent rating, and resulted in a level of impairment that most closely approximated the level of impairment associated with a 30 percent rating. 

Under the General Formula for Mental Disorders (General Formula), the Board must conduct a "holistic analysis" that considers all associated symptoms, regardless of whether they are listed as criteria. Bankhead v. Shulkin, 29 Vet. App. 10, 22 (2017); 38 C.F.R. § 4.130. The Board must determine whether unlisted symptoms are similar in severity, frequency, and duration to the listed symptoms associated with specific disability percentages. Then, the Board must determine whether the associated symptoms, both listed and unlisted, caused the level of impairment required for a higher disability rating. Vazquez-Claudio v. Shinseki, 713 F.3d 112, 114-118 (Fed. Cir. 2013). 

The issue in this appeal is whether the Veteran's associated symptoms caused the level of impairment required for a disability rating of 50 percent or higher. The Veteran's current 30 percent evaluation contemplates occupational and social impairment with occasional decrease in work efficiency and intermittent periods of inability to perform occupational tasks (although generally functioning satisfactorily, with routine behavior, self-care, and conversation normal), due to such symptoms as: depressed mood, anxiety, suspiciousness, panic attacks (weekly or less often), chronic sleep impairment, mild memory loss (such as forgetting names, directions, recent events). 

A 50 percent rating is assigned for PTSD manifested by occupational and social impairment with reduced reliability and productivity due to such symptoms as: flattened affect; circumstantial, circumlocutory, or stereotyped speech; panic attacks more than once a week; difficulty in understanding complex commands; impairment of short- and long-term memory (e.g., retention of only highly learned material, forgetting to complete tasks); impaired judgment; impaired abstract thinking; disturbances of motivation and mood; difficulty in establishing and maintaining effective work and social relationships.

A 70 percent rating is assigned when symptoms such as suicidal ideation; obsessional rituals which interfere with routine activities; intermittently illogical, obscure, or irrelevant speech; near-continuous panic or depression affecting the ability to function independently, appropriately and effectively; impaired impulse control (such as unprovoked irritability with periods of violence); spatial disorientation; neglect of personal appearance and hygiene; difficulty in adapting to stressful circumstances (including work or a worklike setting); or inability to establish and maintain effective relationships cause occupational and social impairment with deficiencies in most areas, such as work, school, family relations, judgment, thinking, or mood.

A 100 percent rating is assigned for total occupational and social impairment, due to such symptoms as: gross impairment in thought processes or communication; persistent delusions or hallucinations; grossly inappropriate behavior; persistent danger of hurting self or others; intermittent inability to perform activities of daily living (including maintenance of minimal personal hygiene); disorientation to time or place; or memory loss for names of close relatives, own occupation or own name.

The only relevant medical records associated with this claim are Vet Center records dated in 2021 and a VA examination report. Various lay statements were also submitted. The Veteran's sister reported that the Veteran does not like crowds, enclosed areas, and scans for exits when in public. See Buddy/Lay Statement (May 2021). The Veteran's mother and stepfather stated that they see the Veteran almost daily, and the Veteran has anxiety, depression, nightmares, hates crowds, and has switched jobs multiple times. See Buddy/Lay Statements (May 2021). The Veteran's daughter reported her dad did not like crowds and had nightmares and anxiety. See Buddy/Lay Statement (May 2021). The Veteran's girlfriend stated she felt the Veteran had anxiety and depression. See Buddy/Lay Statement (May 2021). 

Vet Center records demonstrate the Veteran reported frustration, hypervigilance, angry outbursts, isolation, and nightmares. He denied suicidal and homicidal ideations. See Medical Treatment Record Government Facility (June 2021).

A VA examiner conducted an evaluation of the Veteran. The examiner opined that the Veteran's PTSD manifested in occupational and social impairment with occasional decrease in work efficiency and intermittent periods of inability to perform occupational tasks, although generally functioning satisfactorily, with normal routine behavior, self-care, and conversation. The Veteran reported he was employed and that his daughter lived with him. The examiner noted the PTSD symptoms included depressed mood, anxiety, and chronic sleep impairment. The Veteran had appropriate appearance and hygiene, was fully oriented, and had a goal-directed thought process. The examiner noted the Veteran was coherent and relevant, with good memory, insight, judgment, and abstract thinking. The Veteran denied hallucinations, delusions, depression, and being suicidal or homicidal. The Veteran did have distressing memories and dreams. See C&P Exam (April 2019).

At the Board hearing, the Veteran reported that he has held multiple jobs since service discharge and has missed significant time at his current position. He reported daily anxiety, nightmares almost every night, feelings of being very nervous and apprehensive, depression, and feeling withdrawn. The Veteran stated that although he was able to conduct most of his family responsibilities, his daughter helped him out. He didn't have many friends, and his only friends were other veterans. He also stated that he did not many recreational activities and did not like being in a group although he did attend his local Veterans of Foreign Wars. The Veteran also reported that he had missed time from work and has had verbal altercations at work. See Hearing Transcript (March 2021).

The Board finds that the evidence of record does not support an increased evaluation. Regarding symptoms that are contemplated by a 50 percent evaluation, the Veteran's symptoms do not show a flattened affect, abnormal speech, memory impairment, difficulty with complex commands, impaired judgment, impaired abstract thinking, or panic attacks more than once per week. The evidence did show some symptoms reflected by a 50 percent evaluation, such as disturbance of motivation and mood, to include anxiety and depression. Further, the Veteran's symptoms are more accurately reflected by the 30 percent evaluation. For example, the Veteran's PTSD is manifested by depressed mood, anxiety, chronic sleep impairment, and occupational impairment with occasional decrease in work efficiency and intermittent periods of inability to perform occupational tasks. The Board also finds the severity, frequency, and duration of the Veteran's unlisted symptoms such as frustration, hypervigilance, angry outbursts, isolation, and nightmares, more closely approximate the symptoms contemplated by a 30 percent rating, which are less severe, less frequent, and shorter in duration than those contemplated by a 50 percent rating. See 38 C.F.R. § 4.126. These symptoms are more akin to a depressed mood, anxiety, suspiciousness, and chronic sleep impairment and do not rise to the level of panic attacks more than once a week, difficulty with complex commands, and reduced reliability and productivity. 38 C.F.R. § 4.130. 

Regarding occupational and social impairment, the Board also finds that the Veteran's symptoms result in impairment that is more accurately reflected by a 30 percent evaluation. Although the Veteran reported changing jobs, missing time from work, and verbal altercations at work, the 2019 VA examiner found that these symptoms only resulted in an occasional decrease in work efficiency and intermittent periods of inability to perform occupational skills, although generally functioning satisfactorily. The Board finds that this level of occupational impairment does not rise to the level of reduced reliability and productivity. Additionally, although there is social impairment such as not having many friends, the Veteran sees his mother almost daily, has a good relationship with his daughter and other family members, has a girlfriend, and is active at his local Veterans of Foreign Wars where he feels safe. The Board finds that this level of social impairment does not demonstrate difficulty in establishing and maintaining effective social relationships.

In short, the preponderance of the evidence weighs against finding that the severity, frequency, and duration of the Veteran's symptoms resulted in the level of impairment required for a 50 percent rating. The criteria for a 50 percent or higher rating are not met.

Accordingly, the claim for a rating in excess of 30 percent for PTSD is denied. There is no doubt to resolve. 38 U.S.C. § 5107(b).

 

 

C.A. SKOW

Veterans Law Judge

Board of Veterans' Appeals

Attorney for the Board K.M., Counsel

The Board's decision in this case is binding only with respect to the instant matter decided. This decision is not precedential and does not establish VA policies or interpretations of general applicability. 38 C.F.R. § 20.1303.